Theresa Kay McFARLAND, Respondent,

v.

Quentin WILSON, Director of Revenue, Appellant,

P.O. Bewick, Defendant.

No. WD 57980.

Missouri Court of Appeals, Western District.

Dec. 19, 2000.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Jefferson City, for appellant.

Robert H. Martin, Independence, for respondent.

Before Presiding Judge LOWENSTEIN, Judge LAURA DENVIR STITH and Judge NEWTON.

LAURA DENVIR STITH, Judge.

Respondent Theresa McFarland was arrested for driving while intoxicated and, pursuant to Section 577.041 RSMo Cum. Supp.1998, the Director of Revenue suspended her driving privileges for one year for failing to submit to a breathalyzer test. Ms. McFarland appealed that suspension. At trial, the Director attempted to prove that Ms. McFarland was arrested upon probable cause and failed to submit to a breathalyzer test, despite a procedurally proper request to do so. The trial court entered judgment in favor of Ms. McFarland because it believed that Ms. McFarland was not told the reasons why she was asked to submit to the breathalyzer exam in the manner required by Section 577.041. The Director appeals, arguing that because it is undisputed that the police officers read Ms. McFarland the Missouri Implied Consent Law and in so doing informed her of the legal reasons why they wished her to submit to a breathalyzer exam, they sufficiently notified her of the reasons why she was asked to take a breathalyzer exam. We agree. Because it is uncontested that the Director otherwise made a prima facie case, but that the court granted judgment for Ms. McFarland before she presented her evidence, we reverse the judgment and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The evidence adduced below, considered in the light most favorable to the judgment, is as follows:

On May 11, 1999, the police stopped the car Respondent Theresa McFarland was driving and, after determining that she appeared to be intoxicated, arrested her, brought her to the police station, explained to her the Missouri Implied Consent Law under Section 577.020 and Section 577.041,[1] and asked her to submit to a breathalyzer test. She refused to take the test and the Missouri Director of Revenue (the Director) revoked her driving privilege for one year pursuant to Section 577.041.

Ms. McFarland filed a petition for review in the Circuit Court of Jackson County on June 10, 1999. The circuit court held a hearing on Ms. McFarland's Petition on October 21, 1999. At the hearing, the arresting officer, Mark Fugate, testified that on May 11, 1999, at approximately 1:00 a.m., he was on patrol when he encountered a small pickup truck driven by Ms. McFarland. Officer Fugate noticed Ms. McFarland was driving with no headlights and was swerving on and off the roadway. He stopped her vehicle and asked her to step out. Officer Fugate testified that he noticed Ms. McFarland had difficulty following directions, and that he recognized a moderate odor of alcohol on her breath. He then administered three standard field sobriety tests: the one-legged stand, the walk and turn test, and the horizontal gaze nystagmus test. Officer Fugate testified that Ms. McFarland put her foot down more than three times on the one-legged stand test and that she stated she could not perform the walk and turn test. The officer also testified that when he performed the horizontal gaze nystagmus test on Ms. McFarland, he noticed that her eye movement was not "smooth," and she "had distinct gaze nystagmus before deviation," which "indicates that there's a neurological stimulus that has affected [the] neurotransmitters in the brain ... [and] the brain is altered in a

degree to where [an individual] may not be able to perform normal tasks."

Based on his observations, Officer Fugate was of the opinion that Ms. McFarland was intoxicated to a degree that she could not safely operate a motor vehicle. Officer Fugate placed Ms. McFarland under arrest for suspicion of driving under the influence of alcohol and contacted the police dispatcher. He asked the dispatcher to alert the DUI (Driving Under the Influence) squad that he wanted one of its members to give a breathalyzer test to Ms. McFarland. Officer Fugate then transported Ms. McFarland to the Kansas City Metro Patrol Division, where he met with Officer Larry Bewick, an officer qualified to administer breathalyzer tests.

Officer Bewick testified at the hearing that he was certain that when he came into contact with Ms. McFarland early on the morning of May 11, 1999, he explained all her rights to her under both *Miranda*[2] and under the Missouri's Implied Consent Law. He stated that he specifically explained to Ms. McFarland that, pursuant to the Implied Consent Law, it is "implied or understood under Missouri law, that upon the request of a police officer for her to take a test to determine her blood alcohol content, that she would take that test. The refusal to take that test would result in revocation of her driver's license for a period of one year."

Officer Bewick testified that after twice explaining the Implied Consent Law to Ms. McFarland, he asked her if she understood her rights but, "[s]he stated that she didn't understand those rights at 2:15 in the morning." He said he then further discussed the ramifications of refusing to take the breathalyzer test with Ms. McFarland, but Ms. McFarland still refused to take the test. Officer Bewick also testified that he told Ms. McFarland he wanted her to understand that her refusal to take the breathalyzer "would definitely

---

1. All statutory references are to RSMo Cum. Supp.1998, unless otherwise indicated.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

result in the revocation of her driver's license." He stated that they talked about the consequences "several times." Officer Fugate also confirmed that Ms. McFarland continued to refuse to take the test.

After both police officers testified at the hearing, the Director rested its case. Ms. McFarland then argued that the Director had failed to establish a prima facie case against her. In support she noted that the relevant statute "specifically provides the arresting officer shall include the reasons of the officer requesting a person to submit to a [breathalyzer] test," and claimed that "there's no evidence whatsoever before the Court that that's been done by either one of these officers." She maintained that "you can only have one arresting officer ... And there's no testimony whatsoever ... as to why she was placed

under arrest, and the *reasons* given to her for the test." (emphasis added).

The Director argued that the statute was satisfied when Officer Bewick read the Implied Consent Law warnings to Ms. McFarland, as those warnings explain the reason for conducting the test. The trial court nonetheless held that the Director had failed to prove all of the elements for revoking an individual's license for Driving While Intoxicated as set out in Section 577.041.[3] Although the court made no specific findings in its order as to what element had not been proved, the other elements of the statute had unequivocally been shown, and the colloquy at trial demonstrates that the only element of a prima facie case which Ms. McFarland claimed had not been shown was whether the officers had adequately informed Ms. McFarland of the *reasons* why she was asked to take a breathalyzer test.[4] Based on this

3. The court's order cited the 1982 version of the statute, but the 1998 version was in effect at the time of the arrest and is the version applicable here.

4. The following exchange occurred at the hearing:

THE COURT: As I understand [Ms. McFarland's counsel's] motion, all he's saying is that you failed to show that the officer-the arresting officer ... They didn't—And shall inform the person that—Where is it?

MR. SONNENBERG (for the Office of the Prosecuting Attorney): Right here, Judge, where it's underlined.

THE COURT: Shall include the reasons of the officer for requesting the person to submit to the test. This has come up before. And has it ever been decided that this is superfluous language or that it means what it says?

. . . .

THE COURT: Why they wanted her to take the test. It seems like a silly thing for the legislature to have put in there. And it's very rarely brought up, but it has been brought up. And it seems to me that since it's in there, we can't assume that the—Or I think we can assume that the legislators didn't—probably didn't mean for it to be there, but anyway, it's there. And so we have to use it.

. . . .

MR. SONNENBERG: Well, Your Honor, that is included in the Implied Consent section. And the officer testified as to the—

THE COURT: I know. That would make sense in itself. But anyway, what case do you have that it's—Has it been decided, do you know?

. . . .

MS. BARKLEY (for the Director): I do believe that by reading the Implied Consent, that that is—

THE COURT: Well I know that you think that. But I'm talking about what does the Court of Appeals think.

MS. BARKLEY: I don't know if there is case law or not.

THE COURT: That's what I—

MS. BARKLEY: I'd be glad to try to look it up for you.

THE COURT: Well, in that case I think he's right. And you guys will take it up and we'll find out. I've been wondering about this for a long, long time.

MR. MARTIN: Thank you, Your Honor.

THE COURT: It's been so long. It's been, I bet, 10 or 15 years since the last time somebody brought that up. It was Mike White. I can remember. I was sitting here thinking.

MR. SONNENBERG: Uh-huh.

THE COURT: It was Mike White that brought that up again. And in those days the State didn't automatically appeal these things.

MR. SONNENBERG: Yes sir.

THE COURT: But we'll know now.

MR. SONNENBERG: Thank you. Your Honor.

THE COURT: Okay-doke. And I found—I found the issues for the Petitioner.

perceived failure to meet the requirements of Section 577.041, on October 21, 1999, the court set aside the revocation of Ms. McFarland's license and ordered that her driving privileges be reinstated. The state now appeals.

## II. STANDARD OF REVIEW

 On appeal, we will sustain the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We exercise the power to set aside a decree or judgment "on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Id.* (citations omitted).

## III. THE DIRECTOR MADE A PRIMA FACIE CASE

In his sole point on appeal the Director argues that the trial court erred in setting aside the revocation of Ms. McFarland's driver's license because the uncontroverted evidence established that Ms. McFarland was arrested, that reasonable grounds existed to believe she had driven a motor vehicle in an intoxicated condition, and that she refused the breathalyzer test.

 Section 577.041 specifies the trial court's duty when determining whether a driver's license has properly been revoked:

4. If a person's license has been revoked because of the person's refusal to submit to a chemical test, such person may petition for a hearing before a circuit or associate circuit court in the county in which the arrest or stop occurred ... At the hearing the court shall determine only:

(1) Whether or not the person was arrested or stopped;

(2) Whether or not the officer had:

(a) Reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; or

(b) ..., or

(c) ..., and

(3) Whether or not the person refused to submit to the test.

5. If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive.

Sec. 577.041. Of course, as we have noted elsewhere, the court must also determine whether the State has proved that the person was in fact driving the automobile. *See, e.g., Hampton v. Director of Revenue,* 22 S.W.3d 217 (Mo.App. W.D.2000); *House v. Director of Revenue,* 997 S.W.2d 135 (Mo.App. S.D.1999).

 Section 577.041 further provides that when an officer asks an individual to submit to a breathalyzer test, the "request of the officer shall include the *reasons* of the officer for requesting the person to submit to a test ... [the officer] also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test." Sec. 577.041.1. (emphasis added). *Berry v. Director of Revenue,* 885 S.W.2d 326, 327 (Mo. banc 1994). This is the requirement that the court found was not complied with in this case. We disagree.

Missouri cases have repeatedly held that when an officer explains to the arrested individual that the purpose of the breathalyzer is to determine blood alcohol content, that this explanation sufficiently expresses the reason for the breath test and satisfies the requirements of Section 577.041.1. Thus, *Corum v. McNeill,* 716 S.W.2d 915 (Mo.App. E.D.1986), held that when an officer explains to the arrested individual that the purpose of the breathalyzer test is to determine the amount of alcohol in the individual's system, "[N]o more reason than this is required by the statute." *Id.* at 917. Similarly, in *Bolling v. Schaffner,*

488 S.W.2d 212, 216 (Mo.App.1972), an officer's statement to the arrested individual that the reason for taking the breathalyzer test was to determine the amount of alcohol in his system was sufficient to meet the statutory disclosure requirement. Again, in *Nuyt v. Director of Revenue*, 814 S.W.2d 690, 692 (Mo.App. E.D.1991), the police officer met the statutory requirements, when he told the arrested individual that the request for him to take the breathalyzer was to measure his blood alcohol content, and when the officer informed him of the consequences of his refusal to submit to the breathalyzer.

■ In this case, Officer Bewick testified that he read Ms. McFarland the Missouri Implied Consent warnings, and further testified without objection that he told her that it is "implied or understood under Missouri law, that upon the request of a police officer for her to take a test to determine her blood alcohol content, that she would take that test. The refusal to take that test would result in revocation of her driver's license for a period of one year." Officer Bewick explained to Ms. McFarland that the reason for the breathalyzer test was to determine her blood alcohol content and that the consequences of not submitting to the test would be loss of her license. He adequately explained the reasons he wanted Ms. McFarland to take the test and met the requirements of Section 577.041.1. As the State also proved the other elements of a prima facie case, the court below erred in entering judgment for Ms. McFarland at the close of the State's case. As Ms. McFarland has not yet had the opportunity to present her evidence in contravention to the State's prima facie showing, we reverse and remand for a new trial.

Presiding Judge LOWENSTEIN and Judge NEWTON, concur.