**Stanley Z. KINSMAN, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. WD 58743.

Missouri Court of Appeals,
Western District.

Submitted March 9, 2001.

Decided July 24, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Bruce R. Levine, Asst. Atty. Gen., Kansas City, for appellant.

Jay T. Grodsky, Kansas City, for respondent.

Before JAMES M. SMART, Jr. P.J., PAUL M. SPINDEN, C.J., and VICTOR C. HOWARD, J.

SMART, Judge.

The Director of Revenue appeals a judgment reinstating the driving privileges of Stanley Z. Kinsman, whose privileges had been revoked by the Director of Revenue pursuant to section 577.041(2) RSMo 1994. We reverse the judgment of the trial court and remand to the trial court with directions to enter judgment upholding the suspension.

## Factual Background

The facts were not disputed in the trial court. At about 11:40 p .m. on December 21, 1999, Missouri Highway Patrol Trooper James Thuss received a radio call concerning a one car accident on 40 Highway just

east of the Blue Springs city limits. Trooper Thuss proceeded to the scene. Upon arrival, Trooper Thuss found an unattended Yellow Cab van upside down in the roadway. He radioed to arrange for a tow of the vehicle. He then radioed Trooper Darwin Blankenship to ask him to go to the convenience store a short distance west of the scene to see if he could locate a driver, while Thuss remained at the crash site for safety purposes.

Trooper Blankenship proceeded to the convenience store, where a customer informed the trooper that the person he was looking for was inside the store. Inside the store, the store clerk directed the trooper to Stanley Kinsman by nodding his head toward Kinsman. Kinsman was standing by the doorway with a bag. Kinsman's clothes were "messy," not neatly tucked in. Kinsman had fresh blood and scratches on his hands. Trooper Blankenship obtained permission to search Kinsman. He found marijuana and drug paraphernalia and therefore arrested Kinsman for possession of both items. Blankenship asked Kinsman if that was his van up the road, and Kinsman responded, "What van?" Blankenship took him to the crash site.

At the crash site, Kinsman produced documents showing that he was a cab driver, and also that the cab involved in the crash was checked out to him that evening. Kinsman smelled of alcohol, had glassy, bloodshot eyes, and had difficulty walking. Kinsman was then taken to the Blue Springs Police Department where he failed the horizontal gaze nystagmus, walk and turn, and one-leg stand tests.

After Kinsman failed the field sobriety tests, Trooper Thuss arrested him for driving a vehicle under the influence. The officer asked him to provide a breathalyzer sample. Kinsman refused to take the test. Kinsman stated that he was drinking that evening at Maxine's, a bar on 40 Highway close to Highway 7, which was several miles away from the crash site. He did not know how his taxi happened to be there. He supposed that his cab must have been stolen while he was in the bar drinking. Kinsman refused at that time to report the cab as stolen and to file a stolen property report. He did not explain why he did not wish to file the report. Kinsman did not explain how he got to the convenience store from the bar, or why he was just standing around the convenience store, or how he got the fresh scratches on his hands.

Because Kinsman refused to submit to a breath analyzer test, pursuant to section 302.750(2) RSMo 1994, the Director of Revenue suspended Kinsman's driver's license for one year. On January 21, 2000, Kinsman requested a hearing for the purpose of obtaining reinstatement of his driving privileges. The revocation was stayed until a hearing could be held in circuit court. The matter was tried on March 23, 2000. Kinsman chose not to testify at the hearing. The court issued a written order on May 13, 2000. The court determined that the State did not prove that the trooper had reasonable grounds to believe that Kinsman was driving. This appeal followed on June 22, 2000.

## Standard of Review

 According to the Director's brief, Kinsman's license was suspended under § 302.750(2). Section 302.750 is the statutory section relating to the suspension of a commercial driver's license due to the refusal to submit to a chemical blood test. However, the Director's notice of appeal and items in the legal file indicate that this is a revocation of a regular driver's license under § 577.041 for refusal of a breathalyzer. Therefore, we shall assume this was

a revocation under § 577.041.[1] In either case, the driver so affected by suspension or revocation may request a hearing before a court of record. A hearing conducted under § 577.041 is similar to a hearing conducted under § 302.750.4, which involves suspension of a commercial driver's license for refusal to submit to a breathalyzer. Pursuant to each of the two statutes, the judge is to determine whether the arresting officer had "reasonable grounds" to believe that the person was driving a motor vehicle in violation of the applicable statute, and whether the person refused to submit to the test.[2] "Reasonable grounds" and "probable cause" are synonyms. *Wilcox v. Dir. of Revenue*, 842 S.W.2d 240, 244 (Mo.App.1992).

In a hearing under § 577.041, "the judge shall determine *only* " (1) Whether or not the person was arrested or stopped; (2) whether or not the officer had "reasonable grounds . . .;" and (3) whether the person refused the test (emphasis added). *See Berry v. Dir. of Revenue*, 885 S.W.2d 326, 328 (Mo. banc 1994) ("the trial court is limited to determining whether the person was arrested, whether the officer had reasonable grounds to believe the person was driving while intoxicated, and

whether the person refused to submit to the test.") It is our duty to construe the statute in such a way as to give effect, if possible, to every word and provision. *Hovis v. Daves*, 14 S.W.3d 593 (Mo. banc 2000). Thus, we assume that the word "only" has some meaning and purpose. The most likely reason for the General Assembly to have used the word "only," in our view, is to make clear that the Director need not show that the officer had more than reasonable grounds (probable cause) to believe the person was driving while intoxicated. In other words, the Director need not *prove*, as part of making a prima facie case, that the individual in question was driving. *Berry*, 885 S.W.2d at 328. At the same time, in order to interpret this statute in a way that does not produce an absurd or unconstitutional result, we may assume that the word "only" refers specifically to the Director's burden. When statutes are loosely drawn, the strict meaning and arrangement of the individual words are not as persuasive as are a reasonable meaning of the words in accordance with the legislative objective. *St. Louis Southwestern Ry. Co. v. State Tax Comm'n*, 319 S.W.2d 559, 562 (Mo.1959). Accordingly, the revoked person is necessarily permitted to overcome the effect of the Director's

1. Section 577.041 also has certain provision related to drivers under 21 years of age, which are not applicable here.

2. The Director's initial burden in a refusal case under § 577.041 differs from his burden in a hearing under § 302.535, which deals with a suspension or revocation for driving with an excessive blood alcohol content. In a hearing under § 302.535, the Director must assume the same burden that applied in the administrative hearing under § 302.530, where the "sole" issue was "whether by a *preponderance of the evidence the person was driving* " in violation of § 302.505. Section 302.530.4. *See Collins v. Director of Revenue*, 691 S.W.2d 246, 251–52 (Mo. banc 1985); *Miller v. Dir. of* Revenue, 719 S.W.2d 787, 789 (Mo. banc 1986). In *McFarland v. Wil-*

*son*, 33 S.W.3d 691, 695 (Mo.App.2000), this court, in discussing the issues to be tried under § 577.041, states that in addition to the issues listed in the statute, the court "must also determine whether the State has proved that the person was in fact driving the automobile." *McFarland* cites *Hampton v. Dir. of Revenue*, 22 S.W.3d 217 (Mo.App.2000) and *House v. Dir. of Revenue*, 997 S.W.2d 135 (Mo.App.1999), both of which involved suspensions under § 302.505 rather than § 577.041. To the extent that *McFarland* implies that the Director has the *initial* burden of proving by a preponderance of the evidence that the person in question was actually driving in a § 577.041 proceeding, we disapprove *McFarland*. This opinion has been approved by the court en banc.

initial evidence of reasonable grounds by coming forward with evidence showing that he or she was not in fact driving. If the revoked person does produce such evidence, the inquiry necessarily shifts from the issue of whether the officer had probable cause to the issue of whether the person was *in fact* driving. Otherwise, we would be faced with the anomalous and unjust result that someone who was not actually driving might have a revocation affirmed even after proving that he or she was not in fact driving at the time in question. We do not favor a construction that produces an absurd result. *State ex rel. Stern Bros. & Co. v. Stilley*, 337 S.W.2d 934, 939 (Mo.1960), or an unconstitutional result, *Jackson County Board of Elec. Commrs. v. Paluka*, 13 S.W.3d 684, 690 (Mo.App.2000). However, the fact that we assume there is an implied right of the purported driver to show that he or she was not in fact driving does not mean that the Director's initial burden is any more than a mere showing of probable cause. It is not enough for the person who allegedly refused the breath test to simply argue that the Director did not *prove* he was driving. Therefore, in this case, if the Director showed that the officer had reasonable grounds to believe Kinsman was driving, Kinsman cannot simply criticize the Director's evidence on the basis that it is not conclusive; he has a duty to present evidence that he was not driving if he wishes to shift the inquiry from the probable cause issue.

■ In *Berry v. Dir. of Revenue*, 885 S.W.2d 326 (Mo. banc 1994), the Director presented evidence that the officer had probable cause to believe Berry was driving while intoxicated. The officer testified that he arrived at the scene of a collision, made observation of items indicating Berry was intoxicated, offered Berry the test, and Berry refused. Berry testified that because of the pain he was suffering at the time as a result of the collision, he had no vivid memory of the accident scene. He testified he did not recall any communication with the officer, however. The trial court held the Director failed to sustain his burden, and ordered the reinstatement of Berry's license. The Supreme Court reversed, holding there was no evidentiary support for a finding that the officer lacked probable cause to arrest Berry. *Id.* at 328. Thus, we conclude that when the Director has presented evidence showing probable cause, and the record contains no contrary evidence, it is against the weight of the evidence for the trial court to reach a contrary result.

■ There was no dispute here as to whether Kinsman refused the test. The sole issue tried before the court in *this* case was whether the officer had probable cause to believe that Kinsman was *driving* while intoxicated. In examining the existence of probable cause, the trial court is to consider the information possessed by the officer before the arrest and the reasonable inferences the officer would have drawn therefrom. *Wilcox v. Dir. of Revenue*, 842 S.W.2d at 244. In our review, we determine whether the judgment was unsupported by the evidence, against the weight of the evidence, or an erroneous application of the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Berry v. Dir. of Revenue*, 885 S.W.2d 326, 328 (Mo. banc 1994).

### Reasonable Grounds

■ The Director argues that the pertinent facts, when added together, show that the officer had reasonable grounds to believe Kinsman had been driving the van. The Director points out that Trooper Thuss testified it took him only a few minutes to arrive at the scene after the report, and Trooper Blankenship arrived

only a few minutes after that. The Director suggests that because of the dangerous position of the upside-down cab on the roadway of 40 Highway, and the proximity of the convenience store, it would have appeared unlikely to the officers that there was a significant delay in the reporting of the crash. The officers would have inferred that probably either the proprietor or a customer of the store called in the accident at the time it happened or shortly thereafter.

The cab was checked out to Kinsman. Kinsman had fresh cuts and blood on both hands, which would seem consistent with an attempt to get out of an upside-down vehicle that had rolled over. His clothes were "messy." The store customer and clerk obviously understood Kinsman was connected to the crash of the vehicle. Kinsman denied any connection to, or knowledge of, the overturned van. When it was apparent that this was the cab assigned to him, he denied he had been driving, then said his cab "must have been stolen," yet refused to file a stolen property report. There is a distance of several miles between Maxine's at Highway 40 and 7 Highway, to the crash spot on Highway 40, which was near the west edge of the city limits. There was no explanation for how Kinsman got to the convenience store other than that he drove the vehicle there, and then walked the short distance after the crash after climbing out of the vehicle.

There was no information available to the officer that another person had been in the cab with Kinsman or that Kinsman had been a mere passenger at the time of the crash. The Director is correct that the fact that the officer did not see Kinsman driving his cab does not resolve the matter. "Circumstantial evidence may be relied on when the officer does not actually see who operated the motor vehicle." *See Mayberry,* 983

S.W.2d at 631. "Circumstantial evidence means evidence that does not directly prove a fact in issue but gives rise to a logical inference that the fact exists." *State v. Harris,* 807 S.W.2d 528, 529 (Mo. App.1991).

The Director cites *Cox v. Dir. of Revenue,* 37 S.W.3d 304 (Mo.App.2000). In that case, which was submitted on a set of stipulated facts, a seriously injured person was found lying next to his crashed vehicle, in an intoxicated state, with the driver side door of the car standing open. There were no witnesses able to testify as to who had been driving the vehicle. The court ruled that while the "circumstantial evidence does not directly prove Cox was driving ... [it] plainly gives rise to a logical inference that Cox was the driver." *Id.* at 308. Since no evidence contradicted the inference, the court reversed the trial court decision and ordered the revocation reinstated. *Cox* shows a willingness of the court, where there is evidence of probable cause, to reverse the contrary conclusion of the trial court when there is no evidence showing that the person in question was *not* driving. In this case, as in *Cox,* there is simply no evidence that Kinsman was not driving the vehicle.

Kinsman did not put on evidence in the trial court, and did not impeach the credibility of the officers. Kinsman also has not filed a brief on this appeal. Therefore, although we seek to consider the evidence in the light favorable to Kinsman, the only evidence contradicting the officer's reasonable grounds was the bare denial by Kinsman that he had been driving earlier that night. We are to view the facts confronting the officer "from the vantage point of a prudent, cautious, and trained police officer at the scene at the time of the arrest." *Wilcox v. Dir. of Revenue,* 842 S.W.2d 240, 244 (Mo.App. 1992). Officers are usually not highly im-

pressed with bare denials in the midst of factual circumstances strongly indicating a proposition is true. Kinsman denied that he was driving; but his denial, and his remark that the cab "must have been stolen," did little, in these circumstances, to undermine the officer's probable cause. There was no explanation why, if the cab had been stolen, Kinsman did not want to file a stolen property report. It also would have appeared to the officer to make little sense to believe that Kinsman "just happened" to be hanging out at the convenience store around midnight when the cab assigned to him "just happened," by some agency other than Kinsman's own hand, to crash nearby outside the same convenience store. It also would have seemed odd to the officer that even though everyone else in the convenience store seemed to be aware of the crash, Kinsman, to whom the cab was assigned, purported to know nothing about the crash.

There is a difference between reviewing a probable cause determination, and reviewing whether the Director showed that *in fact* Kinsman was driving. Kinsman's out-of-court bare denial that he had been driving, under these circumstances, in the midst of unanswered and improbable circumstances, simply was not enough to move the analysis beyond the probable cause issue. This was not a hearing in a criminal DWI case. It was a civil case. There was no requirement of proof beyond a reasonable doubt. *Wilcox v. Dir. of Revenue*, 842 S.W.2d 240, 244 (Mo.App. 1992). The issue was whether the officer had probable cause to believe Kinsman was driving. The Director presented evidence showing that the officer had probable cause to believe Kinsman had been driving. If Kinsman had been the unfortunate victim of unusual circumstances, he certainly could have presented evidence to show that things were not as they appeared. As already noted, the statute must be interpreted to allow Kinsman the opportunity to come forward with exculpatory evidence once the Director has shown that the officer had reasonable grounds. But the failure of Kinsman to present evidence in his own behalf in this case left the trial court with nothing but the Director's evidence. Because this was a civil case, the normal inference from Kinsman's decision to waive the presentation of evidence is that Kinsman had nothing to offer which would tend to show he was not driving on the night in question.

The practical considerations of everyday life on which reasonable people act, not the hindsight of legal technicians, govern the probable cause determination. Probable cause is evaluated from the vantage point of a prudent, cautious, and trained police officer at the scene at the time of arrest. In examining the existence of probable cause, courts consider the information possessed by the officer before the arrest and the reasonable inferences drawn therefrom. To form a belief amounting to probable cause, the arresting officer need not possess all the information concerning the offense and the arrestee's participation in it.

*Wilcox v. Dir. of Revenue*, 842 S.W.2d 240, 244 (Mo.App.1992) (internal citations omitted).

Because the trial court held that the Director had failed to show that the officer had reasonable grounds to believe Kinsman was driving, and because that conclusion was not supported by substantial evidence and was against the weight of the evidence, we reverse the judgment of the trial court and remand the case with directions to the trial court to enter judgment upholding Kinsman's suspension. *Berry v. Dir. Of Revenue*, 885 S.W.2d at 328.

## Conclusion

We reverse the decision of the trial court and remand the case to the trial court with directions to enter judgment upholding the suspension.

SPINDEN and HOWARD, JJ., concur.