Jeffrey Dale BOYD, Plaintiff–Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Defendant–Appellant.**

No. 24370.

Missouri Court of Appeals, Southern District, Division Two.

March 27, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., Brian T. Rabineau, Asst. Atty. Gen., Jefferson City, for appellant.

No appearance for respondent.

NANCY STEFFEN RAHMEYER, Judge.

The Director of Revenue ("Director") appeals the reinstatement of Jeffrey Dale Boyd's ("Boyd") driving privileges. This is the second time this case has been before this court. The first appeal remanded the matter back to the trial court because of the trial court's failure to determine all the issues required by the applicable statute. *See Boyd v. Director of Revenue*, 43 S.W.3d 901 (Mo.App. S.D.2001). Having now decided all the required issues, the Director again appeals. We reverse the trial court.

Boyd was arrested for driving while intoxicated. Because Boyd refused to submit to a chemical test of his breath

at the time of his arrest, the Director revoked Boyd's driving privileges under § 577.041.3.[1] Boyd petitioned the circuit court to reinstate his driving privileges pursuant to § 577.041.4. After taking evidence, the trial court found there to be no evidence that Boyd was intoxicated "behind the wheel of a motor vehicle on the date in question" and reinstated Boyd's driver's license.[2] Appellant contends that the trial court's judgment was against the weight of the evidence and misapplied the law in that the information available to the arresting officer at the time of Boyd's arrest was sufficient to support a reasonable suspicion that Boyd had been driving a vehicle in an intoxicated condition.

Because this is a judge-tried case, the applicable standard of review requires the trial court's judgment to be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Rule 84.13(d); *St. Pierre v. Director of Revenue*, 39 S.W.3d 576, 579 (Mo.App. S.D.2001). This is also the correct standard of review for proceedings under § 577.041.4. *Id.*

In determining whether to stay a rescission of driving privileges based on a refusal to submit to chemical testing, the court must answer three questions after the hearing. *Id.* First, whether or not the person was arrested; second, whether or not the officer had "[r]easonable grounds to believe that the person was driving a motor vehicle while in an intoxicated . . . . condition;" and third, whether or not the person refused to submit to the breath test. § 577.041.4. If any of the three questions are answered negatively, then the

court must order reinstatement of the driver's license. § 577.041.5. In Boyd's case, because there was no disagreement as to whether Boyd was arrested or whether he had refused to submit to the test, the judge only had to determine whether the arresting officer had reasonable grounds to believe that Boyd was operating a motor vehicle in an intoxicated condition.

■■■ " 'Reasonable grounds' and 'probable cause' are synonyms." *Kinsman v. Director of Revenue*, 58 S.W.3d 27, 31 (Mo.App. W.D.2001). "The quantum of proof required to show reasonable grounds is substantially less than that required to establish guilt beyond a reasonable doubt; the court must evaluate the situation from the vantage point of a cautious, trained and prudent police officer at the time of arrest." *Calicotte v. Director of Revenue*, 20 S.W.3d 588, 592 (Mo.App. S.D.2000). Reasonable grounds are determined by taking into account the "practical considerations of everyday life on which reasonable people act, not the hindsight of legal technicians[.]" *Id.* Circumstantial evidence may be relied upon when an officer does not actually see the driver operating the vehicle. *Id.* An officer may also rely upon evidence from another officer when determining whether there is probable cause. *Id.*

We now review the evidence indicating whether the arresting officer had reasonable grounds to believe Boyd had been operating a motor vehicle in an intoxicated condition. Officer Jason Long received a call from his dispatcher around 12:30 a.m. on March 9, 1999 that a vehicle ran through the barricades of a dead-end

---

**1.** All references to statutes are to RSMo 2000, unless otherwise indicated.

**2.** The facts necessary to resolve the issue on appeal shall be recounted during the analysis

and discussion of the point relied on. For a more complete recitation of the facts, *see Boyd*, 43 S.W.3d at 902–03.

street in West Plains.[9] Officer Long immediately responded to the call and at 12:39 a.m. he observed Boyd walking where the dispatcher advised him that a subject might be found. Boyd matched the description given by the person who called in the accident ("the eyewitness") and was walking in the same direction the eyewitness said the driver was walking when he left the scene of the accident.

Upon stopping Boyd, Officer Long asked him how he was doing and Boyd responded, "I think you know that." When Officer Long asked Boyd what was going on, Boyd said, "I believe you know that already. That's why you're here." Officer Long could tell the man was intoxicated by his movements and by smelling alcohol on him. When he asked Boyd if he'd had anything to drink, Boyd stated, "Yeah, I've had a couple." Officer Long then asked Boyd what had happened that evening, and Boyd again stated that the officer already knew that and that was why the officer was there. Officer Long asked him if he had been driving and had been in an accident, and Boyd stated, "Yeah, that's why you're here. You know that." Officer Long then asked Boyd again if he had been drinking, and he became "somewhat belligerent" and stated that he had not been drinking. When asked to do field sobriety tests, Boyd became combative and had to be restrained. Officer Long then transported him to the police station in his patrol car. While in the patrol car, Boyd told the officer that he had not been driving all night and that someone had stolen his car.

The trial court's conclusion that there was insufficient evidence that the arresting officer had reasonable grounds to believe Boyd was driving a car while intoxicated is against the weight of the evidence and a misapplication of law. Boyd matched the description of the eyewitness that reported the accident. Where and when Boyd was stopped matched the information from the eyewitness concerning the timing of the accident, the driver leaving the scene, and the direction in which the driver was walking. Boyd was obviously drunk, he admitted having some drinks, and there was no time between the accident and his being stopped that his drunkenness could have resulted from alcohol consumed after the accident. Boyd's remarks to Officer Long could easily cause the officer to deduce that Boyd had recently been involved in some sort of illegal activity. Boyd admitted that he had been driving and had been involved in an accident. These facts are sufficient to provide a reasonable, cautious, trained, and prudent officer reasonable grounds to believe Boyd had been driving a car while intoxicated.

Boyd presented no evidence to rebut the state's case. While we must view the evidence in a light favorable to Boyd and defer to the trial court's determination of credibility, the only evidence contradicting there being reasonable grounds is Boyd's later denial as to whether he had been driving and drinking. *See, e.g., Calicotte,* 20 S.W.3d at 592–93. A nearly identical situation occurred in *Kinsman v. Director of Revenue,* 58 S.W.3d 27 (Mo.App. W.D. 2001), where the court noted that the facts must be viewed from the perspective of a "prudent, cautious, and trained police officer at the scene at the time of the arrest." 58 S.W.3d at 33. As noted by the court in *Kinsman:*

> If Kinsman had been the unfortunate victim of unusual circumstances, he certainly could have presented evidence to show that things were not as they appeared.... But the failure of Kinsman to present evidence in his own behalf in this case left the trial court with nothing but the Director's evidence. Because this was a civil case, the normal infer-

ence from Kinsman's decision to waive the presentation of evidence is that Kinsman had nothing to offer which would tend to show he was not driving on the night in question." *Id.* at 34. The court also noted, "Officers are usually not highly impressed with bare denials in the midst of factual circumstances strongly indicating a proposition is true." *Id.* at 33–34. No evidence indicates Boyd was not driving the vehicle in an intoxicated condition.

In denying the license revocation, the trial judge made extensive written findings explaining his reasoning. The trial court found, "No admissible evidence placed petitioner intoxicated behind the wheel of a motor vehicle on the date in question." The court stated, "The court ruled that while the admissible evidence would establish a basis for suspicion, that suspicion could not rise to the level of 'reasonable grounds,' in that the arresting officer [knew] too few *objective facts* to establish such grounds." The trial court wrote an in-depth analysis of the case law and made it very clear that his basis for finding no reasonable grounds was based on Officer Long's reliance upon hearsay in the form of information gleaned from the eyewitness and the lack of any non-hearsay evidence that Boyd was driving the vehicle that went through the barricade.

The problem with the trial court's reasoning is two-fold. First, as pointed out above, there need not be specific evidence placing Boyd behind the wheel of the car; rather, that evidence can be circumstantial. In *Kinsman* there was no evidence of any person seeing the appellant behind the wheel of the car that was wrecked. 58 S.W.3d at 32–34. No eyewitness saw Kinsman walk from the vehicle, as in this case. Rather, Kinsman's actions at a convenience store walking distance from the wreck indicated to the officer that he had

been driving the wrecked vehicle. The appellate court found sufficient evidence supporting the arresting officer's claim of reasonable suspicion that Kinsman drove the car while intoxicated, and reversed the trial court's decision to reinstate Kinsman's license. *Id.* at 34.

The second problem with the trial court's reasoning is that it appears to apply a higher level of proof than is required. The trial court believed that the information from the eyewitness was hearsay, and, therefore, had to be found reliable through personal observation and corroboration before that information could lead the arresting officer to have reasonable suspicion. This is an erroneous statement of the law. Hearsay can establish probable cause because it is not offered for its truth, but to support the officer's belief that probable cause existed. *McCabe v. Director of Revenue,* 7 S.W.3d 12, 14 (Mo.App. E.D.1999). Moreover, Officer Long confirmed information from the eyewitness when he found an individual matching the description given by the eyewitness where the eyewitness stated the individual could be found.

The trial court relied upon *Nightengale v. Director of Revenue,* 14 S.W.3d 267 (Mo.App. W.D.2000) in reinstating Boyd's license. That case is factually and legally different from this case. In *Nightengale* the only evidence was that an officer was dispatched to a location of an accident where the driver had left the scene of the accident. *Id.* at 268. The officer subsequently located and arrested Nightengale for leaving the scene of the accident. After the arrest he determined that she was "possibly" under the influence of alcohol or drugs and he transported her to the city detention center. *Id.* He left her in the custody of a second officer who conducted field sobriety tests and requested her to submit to a chemical test, which she declined. *Id.* The officer who made the first

arrest was not called to testify at trial nor was his testimony admitted into evidence. *Id.* at 270. No evidence established that Nightengale was intoxicated while she was driving a vehicle. The officer who testified was told that Nightengale was arrested for leaving the scene of the accident and there was a possibility that she was under the influence of alcohol or drugs. *Id.* There was no evidence regarding the time between the accident and Ms. Nightengale's arrest, or where she was or what she was doing when she was arrested. *Id.* In contrast a review of the evidence in the present case was that the officer who made the arrest of Boyd did so promptly after the accident based on reports from an eyewitness concerning an accident. The reports were verified by the officer's observations and conversations with Boyd. That officer testified at the trial as to his observations and probable cause.

The trial court's judgment that the officer did not have reasonable suspicion that Boyd drove a vehicle while intoxicated is against the weight of the evidence and not supported by substantial evidence. As such, the trial court's judgment is reversed and this case is remanded to the trial court with a directive to enter judgment affirming Director's revocation of Boyd's driver's license.

GARRISON, P.J., and PREWITT, J., concur.