James A. COFFIN, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. WD 69029.

Missouri Court of Appeals, Western District.

March 10, 2009.

Scott T. Jansen, Jefferson City, for appellant.

James A. Chenault, III, Sp. Asst. Attorney General, Jefferson City, for respondent.

Before JAMES M. SMART, JR., P.J., LISA WHITE HARDWICK, and JAMES E. WELSH, JJ.

JAMES M. SMART, JR., Judge.

James Coffin appeals the trial court's judgment upholding the Director of Revenue's revocation pursuant to section 577.041 of Coffin's driving privileges for refusing to submit to a breath test. The judgment is affirmed.

## Background

On June 7, 2007, at approximately 1:50 a.m., Missouri Highway Patrol Trooper Chris Winter received a call about a vehicle traveling westbound in the eastbound lanes of Interstate 70, near Kingdom City. While en route, Trooper Winter was informed that the vehicle had turned around, was traveling eastbound, and had wrecked near the 157 mile marker. When the trooper arrived at the location, he found a pickup truck high-centered on the median barrier cables and about 150 feet of damage to the median barrier. No one was in the truck.

Winter ran the truck's registration and found that James Coffin was one of its owners. He called a telephone number he obtained for Mr. Coffin and spoke with Coffin's wife. Mrs. Coffin was aware the "truck had been crashed."[1] Mrs. Coffin told the officer that Mr. Coffin was not currently at the residence. She provided Trooper Winter with Coffin's cell phone number. The trooper called the cell phone

---

1. Though the trial court did not consider this information in its determination of probable cause (incorrectly believing that the testimony was hearsay), the court was fully entitled to consider it; and, thus, we may consider it on appeal in our determination of whether the officer had probable cause. The statement by Mrs. Coffin was not hearsay because it was offered only to show the information gathered by the officer in his investigation. *See Edmisten v. Dir. of Revenue*, 92 S.W.3d 270, 272 n. 1 (Mo.App.2002) (in reasonable grounds determination, the truth of a third party's statement to the officer is not at issue; such statements are admissible to show what the officer knew at the time); *Burleson v. Dir. of Revenue*, 92 S.W.3d 218, 221 (Mo.App.2002) ("hearsay evidence is sufficient to establish probable cause to arrest because it is not offered for its truth, but to explain the basis for a belief that probable cause to arrest existed").

number, and Coffin answered. The trooper identified himself and asked Coffin where he was. Coffin said he was at home, giving the address at which Coffin's wife had just spoken to the officer.

Trooper Winter detected what he thought was slurred speech from Mr. Coffin. The trooper could hear the noise of tractor-trailers in the background. The trooper asked Coffin if he could come by and talk to him about his truck. Coffin acted surprised and asked what had happened. Winter told Coffin that his truck had been found wrecked on the interstate. Winter told Coffin that he needed to talk to him about it and asked again for his location. Coffin said that he was at home. When the trooper stated that he knew Coffin was not at home, Coffin hung up the phone. The trooper was unable to make further contact with him via cell phone the rest of the night.

Approximately two hours later, a county deputy assisting in the search notified the trooper that he had located Coffin about 200 feet away from the accident scene and detained him. Trooper Winter arrived on the scene approximately six or seven minutes later, at about 4:00 a.m.

Trooper Winter recognized signs of intoxication when he came into contact with Coffin:

I observed his eyes to be bloodshot and glassy. I could tell from my phone conversation with him earlier that his speech was slurred. At the time when I made contact with Mr. Coffin, he was very agitated and he was cursing, and telling us that he wasn't—he wasn't driving, he didn't know what was going on. He was very belligerent.

And I could still tell at the time that there was somewhat of a slurred (sic) in his speech. But with the—with the raised tone of his voice, sometimes that's a little harder to detect [than] when a person is sitting in your car and they're talking softly.

The trooper noticed a strong odor of intoxicants on Mr. Coffin's breath and about his person and observed resting nystagmus in his eyes. He also saw that Mr. Coffin's pant legs and shoes were wet and that there was a small amount of mud on the bottom of his shoes. The only wet area in the vicinity was a large concrete culvert in the area where Coffin had been located by the deputy. Coffin refused Trooper Winter's request to perform field sobriety tests. He stated that he was not the driver and, therefore, did not have to perform the tests. Based on all of these observations, the trooper concluded that Mr. Coffin was intoxicated. He arrested Mr. Coffin for driving while intoxicated and leaving the scene of an accident.

Trooper Winter "Mirandized" Coffin, transported him to jail, and advised him of the "Implied Consent" law. Coffin did not agree to take a chemical test of his breath. Consequently, the Director of Revenue revoked Coffin's driver's license for a period of one year, pursuant to section 577.041.[2]

Mr. Coffin then petitioned the circuit court for review of the revocation. Following an evidentiary hearing, the circuit court affirmed the revocation. Coffin appeals.

## Discussion

Coffin says the trial court erred in upholding the revocation of his driving privileges, because the Director failed to prove that the trooper had reasonable grounds to believe (1) that Coffin was driving a motor vehicle on the night in question, or (2) that he was intoxicated at the time he allegedly was driving.

**2.** Revised Statutes of Missouri (RSMo), Cumulative Supplement, 2005.

## Standard of Review

■ In a license revocation case, as in any other court-tried case, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Hinnah v. Dir. of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002) (*citing Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)).

Under Missouri's "implied consent" law, a person who drives on the state's public highways is deemed to have consented to a chemical test to determine the alcohol or drug content of his blood. *Id.* at 619; section 577.020.1.[3] An officer who asks a driver to submit to a chemical test must state his reasons for requesting the test and advise the driver that refusal will result in immediate revocation of his driver's license. Section 577.041.1. If, after being so informed, the driver still refuses to take the test, the Director will revoke the driver's license for one year. Section 577.041.3.

■ Pursuant to section 577.041.4, the driver may petition for a hearing before the circuit court seeking to have the revocation set aside. At the hearing, the court "shall determine only" (1) whether the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether the person refused to submit to the test. *Kinsman v. Dir. of Revenue,* 58 S.W.3d 27, 31 (Mo. App.2001);[4] section 577.041.4. "The Director bears the burden of establishing each element by a preponderance of the evidence." *Warner v. Dir. of Revenue,* 240 S.W.3d 745, 749 (Mo.App.2007). "Failure to prove all three elements will result in reinstatement of the driver's license." *Id.* (*citing Hinnah,* 77 S.W.3d at 620; section 577.041.5).

## Analysis

■ Coffin does not dispute that he was arrested or that he refused to submit to a chemical test. The only issue is whether the officer had "reasonable grounds" to believe that Coffin was driving while intoxicated. Sec. 577.041.4.

■ The term "reasonable grounds" is virtually synonymous with "probable cause" in this context. *Hinnah,* 77 S.W.3d at 620. Probable cause exists when the officer's "knowledge of the particular facts and circumstances is sufficient to warrant

---

**3.** Section 577.020.1 lists six circumstances under which a person operating a motor vehicle upon the public highways is deemed to have consented to a chemical test to determine the alcohol or drug content of his blood. *Howdeshell v. Dir. of Revenue,* 184 S.W.3d 193, 195 (Mo.App.2006). The circumstance pertinent to this case is when "the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition[.]" *Id.;* section 577.020.1(1).

**4.** The editor's headnote in *Hinnah,* 77 S.W.3d at 616, suggests that the Court in *Hinnah* overruled *Kinsman.* We note that the Court in *Hinnah* simply disapproved the entirely gratuitous dictum in *Kinsman* (opportunistically argued by the appellant in *Hinnah* ) to the effect that a licensee should be able to contest a revocation by showing that he or she was not actually driving. *Hinnah,* 77 S.W.3d at 621. To put that argument to rest, the *Hinnah* Court specified that *Kinsman* is overruled "to the extent that *Kinsman* holds that the director must prove actual driving" as opposed to proving only that the officer had reasonable grounds to believe the licensee was driving. *Id.* at 622. Since a cursory review of *Kinsman* shows that it did *not hold* that the director must prove actual driving, we cannot concur in the opinion of the Thomson–West editor that *Kinsman,* in any other respect, has been overruled.

a prudent person's belief that a suspect has committed an offense." *Id.* at 621. The trial court must assess the facts by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer. *Kinsman,* 58 S.W.3d at 34. The probable cause determination is governed by the "practical considerations of everyday life on which reasonable people act, not the hindsight of legal technicians." *Id.* There is no precise test for probable cause; the determination is based on the particular facts and circumstances of each individual case. *Hinnah,* 77 S.W.3d at 621.

In investigating this matter, the patrolman learned from the dispatch that the driver of Mr. Coffin's vehicle had been traveling the wrong way on Interstate 70. He also knew that the driver had ascertained at some point that he was traveling the wrong way, and then had exited the interstate and turned around, but shortly thereafter drove onto the median barrier. Instead of stopping, the driver of Coffin's vehicle continued to drive on the barrier, finally either giving up trying to drive off the barrier or disabling his vehicle in the process. By that time, he had driven about 150 feet on the barrier.

Instead of staying visibly near the vehicle after summoning help, Coffin apparently proceeded to hide himself in the area (getting moisture on his pant legs and mud on his shoes). When contacted by phone, he did not acknowledge that he knew the truck had been wrecked, pretending that he was surprised by this information. He did not wish to disclose to the officer where he was. His speech was slurred. Other than his apparently bogus expression of surprise about his truck being wrecked, he expressed no curiosity or concern about the whereabouts of his truck or about how it had ended up wrecked on the highway. Nor did he seem interested in

retrieving it. When the officer indicated he knew that Coffin was not at home, as Coffin represented, Coffin hung up on the trooper, and the trooper was unable to contact him again on his cell phone.

In spite of the fact that he was very close by, Coffin managed to avoid officers for two hours, from approximately 2:00 a.m. until 4:00 a.m., presumably hiding in or near the large concrete culvert. When Coffin was finally found in a search of the area, he was upset, continued vehemently to deny that he had been driving, and stated he did not know "what was going on." Coffin was agitated, cursing, and belligerent. He refused to perform any field sobriety tests. The trooper noticed a strong odor of intoxicants on Coffin's breath and about his person. He also observed nystagmus in Coffin's eyes and saw that his eyes were bloodshot and glassy.

In examining whether probable cause exists, courts consider the information possessed by the officer before the arrest and the reasonable inferences that can be drawn therefrom. *Kinsman,* 58 S.W.3d at 34. "To form a belief amounting to probable cause, the arresting officer need not possess all the information concerning the offense and the arrestee's participation in it." *Id.*

■ It is true that neither Trooper Winter nor any other person actually observed Coffin driving. However, the trooper need not have personally seen Coffin driving or observed that he was intoxicated at the time of the accident. *See Warner,* 240 S.W.3d at 749–51. The officer may rely upon circumstantial evidence when he did not actually see who was operating the vehicle. *Kinsman,* 58 S.W.3d at 33. "Circumstantial evidence means evidence that does not directly prove a fact in issue but gives rise to a logical inference that the fact exists." *Id.*

In *Kinsman*, for example, the investigating officer found a taxi cab wrecked and overturned on the highway. *Id.* at 30. The officer found Mr. Kinsman, standing around at a nearby 24-hour convenience store within walking distance of the accident. *Id.* Kinsman had fresh cuts and blood on both hands. Kinsman, however, denied any connection to or knowledge of the overturned cab. *Id.* After the officer learned that the cab had been checked out to Kinsman, Kinsman claimed that the cab had been stolen earlier that night. *Id.* He had no explanation for why he had not reported the theft. It was also unclear how he got to the convenience store if in fact his cab had been stolen earlier.

As in *Kinsman*, here there was no identifiable eyewitness who saw Coffin behind the wheel of the vehicle that was damaged; and there was no evidence that anyone saw him walk away from the vehicle. *Id.* at 30. But, as in *Kinsman*, Coffin was still in the area when police arrived, and did not wish to be contacted by police. Coffin, like Kinsman, was alone. As in *Kinsman*, the evidence in this case gives rise to the common sense and logical inference that Coffin likely had been driving the vehicle.

Coffin does not actually claim that he was not intoxicated when he was arrested. Instead, he says "the time gap between the alleged act of driving and the Trooper's first contact with [him] negates any finding of reasonable grounds to believe that [he] was intoxicated while allegedly driving." However, any reasonable officer would not assume that Coffin became intoxicated *after* the accident while hiding near a rural stretch of I–70 after 2:00 a.m. Coffin never offered to explain why he remained hidden in the immediate area. There was no evidence that he had access to alcohol in the area where he was found or of alcohol being found in the truck or on his person. *See Howard v. McNeill*, 716

S.W.2d 912, 915 (Mo.App.1986) (officer's probable cause determination justified where the arrestee failed to tell the officer "the potentially exculpatory fact of [his] heavy drinking after the collision").

The circumstantial evidence leads to the likely conclusion that (1) Coffin was the sole occupant and operator of the vehicle; (2) he hid himself from authorities because he himself believed, at the time he stranded his vehicle, that he was intoxicated; (3) when contacted by the officer by phone, he believed he was intoxicated, and therefore did not want to talk to the officer or be discovered by the officer; and (4) two hours after stranding his vehicle, Coffin *still* was demonstrating his belief that he was intoxicated earlier, and still demonstrating that he remained intoxicated (because there was no indication that he had access to intoxicants in the meantime).

Coffin argues the question of whether there was probable cause to believe that he was driving while intoxicated as though this were a criminal case involving issues of submissibility. He relies on *State v. Hughes*, 978 S.W.2d 24 (Mo.App.1998), for example, which was a criminal DWI case. He confuses the probable cause issue with the issue of sufficiency to convict of a criminal offense. If this were an appeal of a DWI conviction instead of an administrative case, the evidence (because of the lack of an eyewitness to Coffin driving) might be insufficient to warrant submission. However, in this civil revocation case under section 577.041, we are not talking about submissibility. We are talking only about whether a reasonably prudent highway patrolman had reasonable grounds ("probable cause"), based on the information available to him and on his own observations, to arrest for driving while intoxicated. The question is not whether Coffin actually was driving or intoxicated; the question is only whether the officer had

reasonable grounds to believe that he was. *See Hinnah*, 77 S.W.3d at 622. It was not necessary that the trooper have *proof. See Warner*, 240 S.W.3d at 750.

Coffin also claims that the trooper impermissibly based his probable cause determination on evidence gathered *after* the arrest. Coffin bases this argument on the trooper's testimony that his report stated he both encountered and arrested Coffin at 4:00 a.m. This, he says, shows that Winter could not have based his probable cause determination on observations prior to the arrest. This report was not introduced into evidence, and we do not have a copy of it. However, the officer's testimony about the sequence of events leading up to the arrest (as already detailed herein) showed that he did, in fact, base his probable cause determination on his observations *prior to* the arrest. The court did not err in relying on that testimony.

Probable cause is simply a matter of observing the circumstances and drawing reasonable and likely inferences from what is detected. Here there was no issue as to whether the information forming probable cause was reasonably reliable information. The report coming from dispatch about the vehicle traveling the wrong way on the interstate was not likely to have been fabricated. The officer then personally observed the damage caused by the erratic driving. The officer personally talked to Coffin's wife at Coffin's residence. She expressed awareness that the truck had been wrecked, and supplied Coffin's cell phone number to the officer. The officer talked personally to Coffin. The officer personally participated in searching the area (though he drove the highway while others searched the terrain), and personally confronted Coffin approximately six or seven minutes after Coffin was found. The officer personally observed the evidence of Coffin's intoxication. The officer personally was familiar with the evasiveness and deception practiced by Coffin which, of course, properly enter into the "reasonable grounds" conclusion.

In this case, a reasonable person would regard it as highly unlikely that someone other than Coffin was driving the vehicle and that Coffin was a victim of another person's horribly dangerous driving—first, driving against the traffic on the interstate, and then, after turning around, recklessly driving onto and mounting the median barrier cables, and then *continuing* to drive over the median barrier for 150 feet, causing damage to the barrier and disabling Coffin's vehicle. If Coffin were a mere unfortunate bystander to this bizarre incident, perpetrated by someone else, Coffin certainly had his chance to inform the trooper of the circumstances instead of attempting to obstruct the investigation. The officer was not obligated to let Coffin's lies, his highly unusual and highly suspicious behaviors, and his obvious intoxication, go without an arrest.

The trial court did not err in concluding that the trooper had reasonable grounds to believe that Coffin had been driving while intoxicated and in upholding the Director's revocation.

Point denied.

## Conclusion

Based on the foregoing, the judgment is affirmed.