**Mark J. HINNAH, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. SC 84192.**

Supreme Court of Missouri,
En Banc.

June 25, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., David J. Hansen, Asst. Atty. Gen., Jefferson City, for Appellant.

Timothy F. Devereux, Clayton, for Respondent.

MICHAEL A. WOLFF, Judge.

The director of revenue revoked the driver's license of Mark J. Hinnah for a period of one year for failing to submit to a chemical test following an arrest for driving while intoxicated. Hinnah filed a petition for review in St. Louis County Circuit Court. After a hearing, the commissioner determined that the arresting officer lacked probable cause to believe that Hinnah was driving while intoxicated. The circuit court judge adopted the commissioner's conclusion and entered judgment restoring Hinnah's license.

The director appealed. This Court granted transfer after opinion by the court of appeals and has jurisdiction. *Mo. Const. art. V, section 10.* The circuit court's judgment is affirmed.

**Facts**

The director called one witness, the arresting officer of the Chesterfield police department. The officer testified that on January 1, 1999, he saw a pick-up truck on the shoulder of Highway 40 (I–64) with the engine running. He pulled behind the truck and saw the occupant, Hinnah, sleeping in the passenger side of the cab. The officer approached the passenger side and woke Hinnah. According to the officer, Hinnah said that he was looking for the Chesterfield police station and gave the officer a passport for identification. The officer noted a strong odor of an intoxicating beverage and testified that Hinnah's eyes were watery, glassy, and bloodshot. He testified that when Hinnah got out of the truck he used the passenger-side door to keep his balance. The officer noted that the front tire of the truck was flat and

there was some damage to the wheel rim. The officer testified that Hinnah said he had fallen asleep while driving and struck a concrete barrier. The officer arrested Hinnah for driving while intoxicated.

Because of adverse weather conditions, the officer transported Hinnah to the police station and performed field sobriety tests.[1] He advised Hinnah of the Missouri implied consent law[2] and asked him to consent to a chemical test for blood alcohol. The statutory term, "chemical test," can refer to the breathalyzer or a test of a sample of the person's blood, urine, or saliva. *Section 577.020.* He informed Hinnah that if he refused to take the test that his license would be revoked for one year. Hinnah refused to take the test.

During cross-examination, the officer acknowledged that he had not seen Hinnah in the driver's seat. The officer testified that, from the odor of alcohol from Hinnah, he could not determine the number, recency, quantity or quality of that alcohol and he could not determine whether Hinnah was intoxicated. He also said that Hinnah's bloodshot eyes could not lead him to the conclusion that Hinnah was intoxicated. The officer also acknowledged that Hinnah might have needed to balance himself with the truck door because he had just awakened and needed a period of time to balance himself.

Hinnah called two witnesses. The first, Keith Tomnitz, testified that he had been driving, not Hinnah. He testified that he was driving when he hit a pothole, which flattened a tire. He walked down the highway and someone picked him up and dropped him off at a gas station where he used a telephone to call his brother to pick him up.

The second witness for Hinnah, Brian Tomnitz, testified that he met his brother, Keith, at the gas station and they drove to where Keith left Hinnah, but Hinnah was nowhere to be found, presumably because of the arrest.

The trial court concluded that the officer did not have probable cause to arrest Hinnah for driving while intoxicated. The record does not disclose any request by the parties for findings of fact and conclusions of law.

**The Statutory Scheme**

▮ The object and purpose of Missouri's implied consent law "is to rid the highways of drunk drivers." *Shine v. Director of Revenue,* 807 S.W.2d 160, 163 (Mo.App.1991). The implied consent law was adopted "to establish a fixed standard for procuring admissible evidence of blood alcohol for use against persons operating automobiles while intoxicated." *State v. Paul,* 437 S.W.2d 98, 103 (Mo.App.1969). The statute's central feature is that any person who drives on the public highways is deemed to have consented to a chemical test to determine the alcohol or drug content of the person's blood.[3]

▮ A person under arrest has a statutory right to refuse chemical analysis of his blood alcohol level. If the arresting

---

1. The sobriety tests in this case involved observations of the eye, pupils, balance, walking, turning, speech, clothing, attitude, unusual actions and ability to follow instructions. Walk-and-turn and one leg stand tests were given. Hinnah was also required to recite the alphabet.

2. *Section 577.041, RSM. Supp.1998.*

3. Section 577.020, RSMo, states in part: "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 577.020 to 577.041, a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood . . . ."

officer has reasonable grounds to believe that the person was driving while intoxicated, the officer is to make a sworn report to the director of revenue that such person refused the requested test. " 'Reasonable grounds' is virtually synonymous with probable cause." *Hawkins v. Director of Revenue*, 7 S.W.3d 549, 551 (Mo.App.1999). The director will then revoke for a one-year period the license of the person refusing to take the test.[4]

◼ Upon request, a post-revocation hearing is available in the circuit court. The issues are limited to: (1) whether or not the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test. *Section 577.041.4.* "If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive." *Section 577.041.5.* The director, thus, has the burden of proof at the hearing. *Rain v. Director of Revenue*, 46 S.W.3d 584, 587 (Mo.App.2001).

◼ The inquiry, however, ends once these three questions have been answered. A showing by the defendant of who was actually driving was not contemplated by the legislature. Courts must give effect to the language as written. They are without authority to read into a statute legislative intent contrary to intent made evident by plain language. *Kearney Special Road District v. County of Clay*, 863 S.W.2d 841, 842 (Mo. banc 1993). Here the statute clearly requires revocation of a person's license if he or she refuses a chemical test after an arrest based on probable cause to believe that the person was driving while intoxicated.

There is no dispute that Hinnah was arrested and refused to take the chemical test. The sole issue is whether the arresting officer had probable cause to believe that Hinnah was driving a motor vehicle in an intoxicated or drugged condition.

## Standard of Review

◼ This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This Court defers to the trial court's determination of credibility. *Prozorowski v. Director of Revenue*, 12 S.W.3d 405, 408 (Mo.App.2000). If the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, then there is no need to defer to the trial court's judgment. *Hampton v. Director of Revenue*, 22 S.W.3d 217, 220 (Mo.App.2000). Here the evidence was controverted, and deference is due to the trial court's determination.

---

4. Section 577.041.1, RSMo, states in relevant part: "If a person under arrest, or who has been stopped pursuant to subdivision (2) or (3) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024 or 565.060, RSMo, or section 577.010 or 577.012. . . . In this event, the officer shall, on behalf of the director of revenue, serve the notice of license revocation personally upon the person and shall take possession of any license to operate a motor vehicle issued by this state which is held by that person. The officer shall issue a temporary permit, on behalf of the director of revenue, which is valid for fifteen days and shall also give the person a notice of such person's right to file a petition for review to contest the license revocation."

### Analysis

 The trial court, in setting aside the revocation of Hinnah's driver's license, simply indicated that the arresting officer "did not have probable cause to arrest" Hinnah for driving while intoxicated or an alcohol-related traffic offense. "Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." *State v. Tokar*, 918 S.W.2d 753, 767 (Mo. banc 1996). Whether there is probable cause to arrest depends on the information in the officers' possession prior to the arrest. *State v. Wiley*, 522 S.W.2d 281, 287 (Mo. banc 1975). There is no precise test for determining whether probable cause exists; rather, it is based on the particular facts and circumstances of the individual case. *State v. Pruitt*, 479 S.W.2d 785, 788 (Mo. banc 1972).

The trial court did not issue any findings of fact or conclusions of law in support of its judgment. "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *Rule 73.01(c)*. Where the trial court does not make specific findings of fact, an appellate court must determine whether there is sufficient evidence to sustain the trial court's conclusion. The officer's testimony, if believed by the finder of fact, would support a finding of reasonable grounds. The officer testified that he observed Hinnah alone inside a truck with its engine running, parked alongside the interstate, that he had a strong odor of alcohol on his breath, had watery, glassy, bloodshot eyes, had difficulty maintaining his balance, and

that he admitted to driving the vehicle, striking a concrete barrier and flattening the tire.

However, as noted, the officer acknowledged during cross-examination that he had not seen Hinnah in the driver's seat. The officer testified that from the odor of alcohol, he could not determine the number, recency, quantity or quality of that alcohol and that he could not determine whether Hinnah was intoxicated from it. He testified that Hinnah's bloodshot eyes could not lead him to the conclusion that Hinnah was intoxicated. The officer also acknowledged that Hinnah might have needed to balance himself with the truck door because he had just awakened and needed a period of time to balance himself. Given the inclement weather and the questionable footing on the side of the highway, it would not be unusual that an individual exiting a vehicle would use the truck door to gain his balance.

The testimony of Hinnah's two witnesses, who said Hinnah was not driving, is largely irrelevant. The issue, under the statute, is whether the officer had probable cause to believe Hinnah was driving and was intoxicated. The only function of testimony that Hinnah was not in fact the driver is to show circumstances that would lead the court to conclude that the officer's belief was unreasonable. It may seem absurd, as the court noted in *Kinsman v. Director of Revenue*, 58 S.W.3d 27 (Mo. App.2001), that the statute would not allow the licensee to contest the revocation simply on the grounds that the licensee was not driving.

Absurd or not, that is what the statute says.[5] The statute can be viewed simply

---

**5.** "Only" means only. The statute, in pertinent part, says: "At the hearing the court shall determine *only:* (1) Whether or not the person was arrested or stopped; (2) Whether or not the officer had: (a) Reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; or (b) Reasonable

as a very strong inducement to take the test or as a sanction for refusing the test. Under the plain words of the statute, the question is not whether the person arrested actually was driving but whether the officer who requested the test had reasonable grounds to believe that the licensee was driving while intoxicated. If the person consents, which is the goal of the statute, the statute is satisfied whether the person fails or passes. If the person fails the test, the state has evidence to use to prove intoxication in a criminal proceeding [6] or license revocation.[7] In either proceeding, the state must prove that the intoxicated licensee was driving.

 In contrast, under section 577.041, the licensee may not contest the revocation solely on the ground that he was not driving. Evidence that the licensee was not driving may be relevant to show the unreasonableness of the officer's belief that the licensee was driving while intoxicated. Beyond that, it is irrelevant. To the extent that *Kinsman*, 58 S.W.3d at 31–32, holds that the director must prove actual driving, it is overruled.

## Conclusion

 The trial court had evidence to support a finding of probable cause, but was free as well to draw the conclusion that there was no probable cause. Either conclusion was sustainable under the record, depending upon the trial court's assessment of the credibility of the officer's testimony that Hinnah said he was driving or upon the court's assessment of the evidence of probable cause as to intoxication.

The judgment is affirmed.

BENTON, LAURA DENVIR STITH and PRICE, JJ., and GARRETT and BARNEY, Sp.JJ., concur.

LIMBAUGH, C.J., dissents in separate opinion filed.

WHITE and RICHARD B. TEITELMAN, JJ., not participating.

STEPHEN N. LIMBAUGH, JR., Chief Justice, dissenting.

I cannot fathom how the commissioner found that the officer did not have reasonable grounds to believe that Respondent Hinnah was driving a motor vehicle in an intoxicated condition. As the majority correctly notes, probable cause, or reasonable grounds, depends on the information in the officer's possession at the time of the arrest, not on information acquired after the fact, *see Hawkins v. Director of Revenue*,

---

grounds to believe that the person stopped, being under the age of twenty-one years, was driving a motor vehicle with a blood alcohol content of two-hundredths of one percent or more by weight; or (c) Reasonable grounds to believe that the person stopped, being under the age of twenty-one years, was committing a violation of the traffic laws of the state, or political subdivision of the state, and such officer had reasonable grounds to believe, after making such stop, that the person had a blood alcohol content of two-hundredths of one percent or greater; and (3) Whether or not the person refused to submit to the test." Section 577.041.4, RSMo. (emphasis added).

6. Section 577.010.1, RSMo, states in full: "A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition."

7. Section 302.530.4, RSMo, states in part: "The sole issue at the hearing shall be whether by a preponderance of the evidence the person was driving a vehicle pursuant to the circumstances set out in section 302.505. The burden of proof shall be on the state to adduce such evidence. If the department finds the affirmative of this issue, the suspension or revocation order shall be sustained. If the department finds the negative of the issue, the suspension or revocation order shall be rescinded."

7 S.W.3d 549, 551–52 (Mo.App.1999); *Wilcox v. Director of Revenue*, 842 S.W.2d 240, 243 (Mo.App.1992), which is what seems to be driving the resolution of this case. It is uncontroverted that in the early night-time hours of New Year's Day, Hinnah was found alone and asleep in a pick-up (albeit in the passenger seat) that was parked on the shoulder of the road with the engine running. One of the front tires was flat and the wheel rim was damaged. Hinnah told the officer that he had fallen asleep while driving and struck a concrete barrier. The officer smelled a strong odor of alcohol on Hinnah's breath and saw that his eyes were watery, glassy and bloodshot.

Although appellate courts defer to the trial court's determination of credibility, there is no need for such deference if the evidence is uncontroverted. *Hampton v. Director of Revenue*, 22 S.W.3d 217, 220 (Mo.App.2000). Because the uncontroverted testimony of the officer that Hinnah admitted that he was driving is alone sufficient to constitute reasonable grounds that Hinnah was indeed driving, *see Pendergrass v. Director of Revenue*, 4 S.W.3d 599, 601 (Mo.App.1999), the majority focuses instead on the purportedly contested and controverted evidence of intoxication. The evidence of lack of reasonable grounds was presented almost entirely through the cross-examination testimony of the officer, as Hinnah, himself, did not testify. The points made on cross-examination are in the nature of mere inconsistencies that do not effectively rebut what the majority agrees is *prima facie* proof of reasonable grounds to believe that Hinnah was intoxicated. *See Phelps v. Director of Revenue*, 47 S.W.3d 395, 401–02 (Mo.App.2001). In particular, the points made were 1) that the officer could not determine the "number, recency, quantity or quality" of the alcohol he smelled on Hinnah's breath, 2) that he could not determine solely from the odor of alcohol whether Hinnah was intoxicated, 3) that he could not determine solely from Hinnah's bloodshot eyes whether Hinnah was intoxicated, 4) that Hinnah did not have slurred speech, and 5) that Hinnah's instability in exiting the pick-up might have been due to the fact that he had just awakened and needed time to balance himself. None of these points controverts the evidence that Hinnah had alcohol on his breath and that his eyes were watery, glassy and bloodshot. Although the officer conceded that neither the smell of alcohol nor the appearance of Hinnah's eyes was alone sufficient to determine that Hinnah was intoxicated, those factors, when combined with the other circumstances surrounding the arrest—that there had been an accident and that Hinnah had fallen asleep with the engine running—were more than enough to establish reasonable grounds that Hinnah was intoxicated. Had Hinnah truly wished to controvert the director's case, he would have testified himself, and his failure to do so may properly be weighed against him. *See State Farm Mutual Automobile Insurance Company v. Allen*, 744 S.W.2d 782, 787 (Mo. banc 1988).

In sum, I agree with the majority that the director made a *prima facie* case that the officer had reasonable grounds to believe that Hinnah was driving while intoxicated, but I would hold that the evidence to that effect was uncontroverted, and that the commissioner's finding of no probable cause was not supported by the evidence.