### Richard James JARVIS, Respondent,

v.

### DIRECTOR OF REVENUE, Appellant.

#### No. ED 80356.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 17, 2002.

nied.

Jeremiah W. (Jay) Nixon, Attorney General, Jan L. Jackson, Assistant Attorney General, Jefferson City, MO, for appellant.

Ronald E. Pedigo, Farmington, MO, for respondent.

MARY K. HOFF, Judge.

The Director of Revenue (Director) appeals from a judgment reinstating the driving privileges of Richard James Jarvis (Driver). Director revoked Driver's driving privileges for one year pursuant to Section 577.041 RSMo 2000, after Driver refused a breathalyzer test. Driver filed a petition for review with the circuit court. Following a bench trial, the trial court set aside the revocation of Driver's driving privileges. We reverse and remand and direct the trial court to reinstate Driver's revocation.

*Factual and Procedural Background*

Darrell Bennett, the arresting officer, testified for the Director. According to Officer Bennett, on June 17, 2000, he received a citizen complaint regarding a blue, "jacked-up" four-wheel drive "Chevy" pickup being operated erratically in the area of Highway 8 and Country Lane. When he proceeded toward that area at approximately 9:30 p.m., he observed a pickup truck fitting that description backing up in the VFW parking lot. Officer Bennett pulled in front of the truck and turned on his red lights. Another squad car accompanied Officer Bennett. Driver and a passenger (Passenger) were exiting the truck as Officer Bennett approached. Officer Bennett told Driver that he was initiating a traffic stop because of a report by another driver.

Officer Bennett testified Driver had a heavy odor of intoxicants on his person and was staggering; however, Officer Bennett did not include this information in his report. Officer Bennett asked Driver where he had come from, and Driver replied that he had come from Highway 8 and Highway P. When Officer Bennett asked him what he had done during the last three hours, Driver replied that he had visited friends and had a few beers. Officer Bennett administered three field sobriety tests which Driver failed. Based upon Driver's performance on the field sobriety tests and Officer Bennett's observations of Driver, Officer Bennett concluded that Driver was intoxicated and placed him under arrest.

At the police station, after being advised of his rights, Driver refused to take a breathalyzer test.

Driver testified on his own behalf, and presented the testimony of two witnesses. According to Driver, he and Passenger had traveled to Viburnum that afternoon. After Driver concluded his business there, he and Passenger stopped at a restaurant and ate sandwiches. They then drove to a lounge in Bismarck, where Driver drank two beers and ate again. The two then proceeded to another establishment where Driver ate a cheeseburger and drank a beer. After that, Driver and Passenger drove to the VFW. They proceeded along Highway P, but met no traffic.

Driver testified that upon arrival at the VFW, he backed into a parking spot, exited his truck, locked the door, and walked toward the VFW entrance. Realizing that he was wearing sunglasses, Driver returned to his truck to retrieve his regular glasses. As he approached his truck door, Officer Bennett pulled in and turned on his lights.

Officer Bennett approached Driver and told him he was looking for the owner of the truck. Driver informed Officer Bennett the truck was his. Driver testified that his vehicle is a green Chevrolet four-wheel drive truck that has a lift kit and oversized wheels and tires. Officer Bennett asked Driver if he had been drinking. Driver replied that he had consumed

"probably two beers in the last seven or eight hours."

Officer Bennett then gave Driver the field sobriety tests. Driver testified that he was taking medication that made him dizzy at that time. Officer Bennett's Alcohol Influence Report indicated that Driver told him he was taking blood pressure medication.

Driver stated that he refused the breathalyzer test at the police station because he was not intoxicated, and because Officer Bennett had maced him three times after Driver became irate.

Passenger's testimony generally corroborated Driver's as to their activities that day, except that he testified they each drank four beers. He also said that they encountered no one on the road between Highway 8 and Highway P. Passenger stated he and Driver were at least fifteen feet away from the truck when they first observed the police officers enter the parking lot. Passenger remained at the VFW following Driver's arrest.

Another witness, a patron of the VFW on the evening of Driver's arrest, testified that he observed the events in the VFW parking lot through a window in the bar. He watched Driver back into the parking space and exit his truck. After Driver locked the truck, he walked toward the front door of the VFW, approximately twenty feet away. When Driver was within five feet of the door, two city police cars pulled in the parking lot and turned on their red lights. The witness said he saw the police officers dragging Driver over to a police car, but did not observe anything else.

Pursuant to Section 577.041, Director suspended Driver's driving privileges for a period of one year for refusing to submit to the breathalyzer test. The trial court issued its Findings of Fact and Judgment setting aside Director's revocation of Driver's driving privileges, holding that the Director failed to show by the preponderance of the evidence that 1) Driver's vehicle was the motor vehicle allegedly operated in a careless and reckless manner; 2) Driver's vehicle matched the description given by the anonymous "tipster"; 3) Driver was actually observed operating his vehicle; and 4) Driver was intoxicated, or that Officer Bennett had probable cause to believe Driver was intoxicated. The trial court concluded that Officer Bennett's request for the breathalyzer test was unreasonable considering the totality of facts adduced at trial.

### Point on Appeal

In its sole point on appeal, Director contends the trial court erred in setting aside the revocation of Driver's license for refusing to submit to a chemical test because its judgment was against the weight of the evidence, not supported by any substantial evidence, and misapplied the law in that Director proved its *prima facie* case by showing that 1) Driver was arrested; 2) Driver refused the test; and 3) Officer Bennett had reasonable grounds to arrest Driver. Director further claims the trial court held the State to a much higher standard than required by law when the trial court failed to limit itself to the three findings as set out in Section 577.041. Driver argues that Officer Bennett's belief that Driver was driving a motor vehicle while intoxicated was unreasonable, and that the trial court did not hold the State to a higher standard than required.

### Standard of Review

We affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Rain v. Director of Reve-*

*nue,* 46 S.W.3d 584, 587 (Mo.App. E.D. 2001). However, we are not required to defer to the trial court's findings when the evidence is uncontroverted and the case is one of admitting the facts or when the evidence is not in conflict. *Id.*

### Discussion

 At trial, the Director has the burden of proving a *prima facie* case to support its revocation of a driver's license. *Hawkins v. Director of Revenue,* 7 S.W.3d 549, 551 (Mo.App. E.D.1999). In a proceeding under Section 577.041, the trial court shall determine only whether 1) the driver was arrested; 2) the arresting officer had reasonable ground to believe that the driver was driving while intoxicated; and 3) the driver refused to submit to the breathalyzer test. *Id.*

 We conclude that the trial court's judgment clearly demonstrates that it incorrectly applied the law in that it required the Director additionally to prove by the preponderance of the evidence that Driver was intoxicated and that Driver was actually observed operating his vehicle. The trial court's Findings of Fact and Judgment reads, in pertinent part, as follows:

1) THE COURT having heard evidence in this matter on the 7th day of August, 2001, the State presented testimony bya (sic) police office who claimed to allegedly have seen the Petitioner, Richard James Jarvis operate a motor vehicle while intoxicated;

2) That the State has the burden to prove by preponderance of the evidence that:

a. The Petitioner was operating a motor vehicle;

b. That the Petitioner was in fact, intoxicated;

c. That there was probable cause for the officer to seize the person of the defendant and request that he perform a breathalyzer test for the content of alcohol in Petitioner's blood. . . .

Contrary to the standard set out in the trial court's judgment, a proceeding which considers an administrative revocation is not a trial of the issue of intoxication; rather the issue is whether the arresting officer had reasonable grounds to believe the driver was driving while intoxicated. *Soest v. Director of Revenue,* 62 S.W.3d 619, 621 (Mo.App. E.D.2001). "Reasonable grounds" is synonymous with probable cause. *Hawkins,* 7 S.W.3d at 551.

 The level of probable cause required for the revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation. *Hinnah v. Director of Revenue,* 77 S.W.3d 616, 621 (Mo. banc, 2002). Probable cause that a person was driving may be established from the person's admissions alone. *Pappin v. Director of Revenue,* 958 S.W.2d 591, 592 (Mo.App. E.D.1998). Furthermore, an officer may rely on information given by citizen eyewitnesses to the arresting officer. *Rain,* 46 S.W.3d at 588. Such evidence is admissible to establish probable cause because it is not offered for its truth, but to explain the basis for a belief that probable cause to arrest existed. *Id.*

Based on Driver's own admissions and Officer Bennett's observations at the scene, Officer Bennett had probable cause to believe Driver was driving or operating a motor vehicle. Further, Driver's vehicle closely matched the description given by the citizen complainant. Driver's vehicle was a dark, four-wheel drive, "jacked-up Chevy" truck, and it was located in the general vicinity where the citizen complainant last observed the vehicle being driven erratically. Additionally, the uncontroverted evidence at trial included

Driver's admissions to Officer Bennett that he had been driving just prior to his arrest and that he had consumed a few beers. Driver did not dispute Officer Bennett's testimony that Driver failed three sobriety tests; he merely attributed his poor performance to dizziness caused by his medication. Given the totality of Officer Bennett's observations and information, as well as Driver's own admissions, sufficient evidence exists to conclude that Officer Bennett had probable cause to arrest Driver for driving while intoxicated. *See Testerman v. Director of Revenue*, 31 S.W.3d 473, 476 (Mo.App. W.D.2000) (probable cause for arrest for driving while intoxicated exists where officer stops vehicle for traffic violation, detects odor of alcohol on driver's breath, driver admits to drinking, and fails one or more field sobriety tests), *overruled in part on other grounds*, 2002 Mo.App. LEXIS 2223 (Mo.App.W.D. Nov. 5, 2002).

Finally, Officer Bennett testified, and Driver likewise admitted, that Driver was arrested and refused to submit to the breathalyzer test. On the record before us, Director met the burden of proving its *prima facie* case.

### Conclusion

We hold the judgment of the trial court is not supported by substantial evidence and erroneously applies the law. Accordingly, the judgment is reversed and remanded to the trial court to enter a judgment reinstating Director's revocation of Driver's driving privileges for a period of time to be determined by Director in accordance with Section 577.041.

LAWRENCE E. MOONEY, Chief Judge, and CLIFFORD H. AHRENS, Judge, Concur.