Ross S. SWANBERG, Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.

No. 24814.

Missouri Court of Appeals, Southern District, Division One.

Nov. 7, 2003.

88

Jeremiah W. (Jay) Nixon, Atty. Gen., Sreenivasa Rao Dandamudi, Jefferson City, for appellant.

David S. Akers, Branson, for respondent.

PER CURIAM.

On January 14, 2003, this Court issued an opinion in this cause. On April 1, 2003, the Supreme Court of Missouri sustained an application for transfer to that court. On September 30, 2003, the Supreme Court entered an order re-transferring the cause to this Court. The original opinion of this Court, which follows is now readopted and reissued.

Appellant, Director of Revenue ("Director") revoked the driver's license of Respondent, Ross S. Swanberg ("Driver"), for a period of one year for failing to submit to a chemical test following an arrest for driving while intoxicated. § 577.041.[1] Driver filed a petition for review in the Circuit Court of Taney County, and after a hearing, the court determined that "no probable cause existed for the arrest of [Driver] at the time the arrest was made ...", and ordered the reinstatement of Driver's driving privileges.

The record shows that in the early morning hours of July 1, 2001, at approximately 3:30 a.m., Driver was traveling on Missouri Highway 76 in Taney County. As the Driver testified, at some point, while going "a little too fast," Driver attempted to round a curve in his lane of traffic but slid into an adjoining ditch. He was alone. After a failed attempt to remove his vehicle from the ditch, a truck came upon the scene and carried Driver to a nearby convenience store. Once inside, Driver inquired of the clerk on duty, Jason Bright, regarding calling a tow truck. At that time he had a long conversation with Mr. Bright but was unable to obtain a tow truck. Later, a friend of Driver's came by the convenience store and retrieved Driver and took him to another friend's home where Driver testified "we ended up drinking and carrying on for a couple of hours." Driver also testified that he then returned to the convenience store when a highway patrolman, Officer L.A. Windle, "pulled up."[2] At trial Driver acknowledged being arrested at about 5:23 a.m.

According to the alcohol influence report received into evidence at trial, Officer Windle wrote that at "0434 hours, July 1, 2001, I was notified of an accident on Mo 76 near Snapps cemetery. I arrived at the scene at 0446 hours. The driver had left the scene. I located the driver at 'Primetime' on Mt. Branson at 0523 hours. He originally stated he was going around the curve in his lane and overcompensated. When I advised him he had went around the curve over the centerline he became angry." Upon further questioning Officer Windle observed that Driver "was very unsteady on his feet" and his "speech was slurred."[3] Officer Windle then administered at least three field sobriety tests on Driver and noted in his report that Driver was "unable to satisfactorily complete the finger to nose test or one leg stand." He also indicated in his report that Driver "would not attempt the ABC's from K thru [sic] Z" and "had nystagmus present in both eyes."

---

1. Statutory references are to RSMo 2000 unless otherwise indicated.

2. At trial, Bright testified that Driver was not intoxicated when he first came to the convenience store but appeared intoxicated when he returned to the convenience store. Mr. Bright also acknowledged that Driver was arrested at approximately 5:23 a.m.

3. At trial, Driver admitted that at the time of his questioning by Officer Windle that he was "intoxicated at that time," but denied he had been drinking before the accident.

Driver was then placed under arrest at approximately 5:27 a.m., and thereafter was informed of his rights under the Implied Consent Law. Driver refused to submit to a chemical breath test, and in due course Director notified Driver of the revocation of his driving privileges for a period of one year.

In the sole point on appeal, Director maintains that the hearing court erred in reinstating Driver's driving privileges because the arresting officer had reasonable grounds to arrest Driver for driving while intoxicated. This was manifested by the officer having observed Driver unsuccessfully complete three field sobriety tests and by Driver's refusal to perform another field sobriety test; Driver's acknowledgment that he had been involved in a single-vehicle accident; his observations that Driver was unsteady on his feet and he slurred while speaking and became angry; and by virtue of the fact that Driver never informed the arresting officer of his alleged "post-crash drinking."

"This Court will affirm the trial court's judgment unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law." *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "This Court defers to the trial court's determination of credibility." *Hinnah*, 77 S.W.3d at 620. However, "[i]f the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, then there is no need to defer to the trial court's judgment." *Id.*

Missouri's implied consent law requires that any person who drives on the public highways is deemed to have consented to a chemical test to determine the alcohol or drug content of the person's blood. *Id.* at 619; *see* § 577.020. A person under arrest has the statutory given right to refuse a chemical analysis of his blood alcohol level. *Hinnah*, 77 S.W.3d at 619. "If the arresting officer has reasonable grounds to believe that the person was driving while intoxicated, the officer is to make a sworn report to the director of revenue that such person refused the requested test." *Id.* at 619–20.

" ' "Reasonable grounds" is virtually synonymous with probable cause.' " *Id.* "Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." *State v. Tokar*, 918 S.W.2d 753, 767 (Mo. banc 1996). "It is not necessary for an officer to actually observe a person driving to have probable cause to arrest the person for driving while intoxicated." *McCabe v. Director of Revenue*, 7 S.W.3d 12, 14 (Mo.App.1999).

"Upon request, a post-revocation hearing is available in the circuit court. The issues are limited to: (1) whether or not the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test." *Hinnah*, 77 S.W.3d at 620; § 577.041.4. " 'If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive.' " *Hinnah*, 77 S.W.3d at 620 (quoting § 577.041.5). "The director, thus, has the burden of proof at the hearing." *Hinnah*, 77 S.W.3d at 620.

Here, there is no dispute that Driver was arrested and refused to take the chemical test. Officer Windle set out in his report that "he [Driver] originally stat-

ed he was going around the curve in his lane and overcompensated." At trial Driver admitted operating his vehicle at the time of the vehicular accident.

 However, "[u]nder the plain words of the statute, the question is not whether [Driver] actually was driving but whether the officer who requested the test had reasonable grounds to believe that [Driver] was driving *while intoxicated.*" *Id.* at 622 (emphasis added). "When an officer is possessed of facts which would justify a person of reasonable caution to form a belief that an offense has been committed and that the person to be arrested committed it, the officer has probable cause for the arrest." *Howard v. McNeill,* 716 S.W.2d 912, 915 (Mo.App.1986). Accordingly, the salient issue in this appeal is whether the arresting officer had probable cause to believe that Driver was driving a motor vehicle in an intoxicated or drugged condition. *See Hinnah,* 77 S.W.3d at 621.

Coupled with the foregoing facts, the uncontroverted record shows that just prior to Driver's arrest, Officer Windle noticed that Driver was "very unsteady on his feet and his speech was slurred," and that he was unsuccessful in completing "the finger to nose test or [the] one leg stand." Furthermore, Officer Windle noted in his report that Driver "would not attempt the ABCs from K thru Z," and that "[h]e had nystagmus present in both eyes."

Driver also admitted that at the time of his questioning by Officer Windle at the convenience store he was, indeed, "intoxicated at that time." [4] Furthermore, the record is devoid of a showing that Officer Windle had any knowledge that Driver had consumed any alcohol after the accident. *See Howard,* 716 S.W.2d at 914–15.

 "[O]ur standard of review does not permit us to disregard uncontroverted evidence that support's Director's contention that all elements were proved." *Hopkins–Barken v. Director of Revenue,* 55 S.W.3d 882, 885 (Mo.App.2001).

 Here, viewed from the perspective of a prudent, cautious and trained law enforcement officer, the arresting officer's observations of driver and the information officer had about the accident were sufficient to establish reasonable grounds to believe that Driver was driving his vehicle in an intoxicated condition at the time of the accident. *See McCabe,* 7 S.W.3d at 14; *Howard,* 716 S.W.2d at 915.

The trial court's finding that no probable cause existed for the arrest of Driver was against the weight of the evidence and not supported by substantial evidence. *See Myers v. Director of Revenue,* 9 S.W.3d 25, 28 (Mo.App.1999). It was error for the trial court to have reinstated Driver's driving privileges. Point well taken.

The judgment is reversed and the cause remanded with directions to reinstate Director's revocation of Driver's driving privileges for a period of one year.

---

4. In *Hinnah,* the field sobriety tests were administered *after* the driver's arrest. *Hinnah,* 77 S.W.3d at 619. Also, in *Hinnah,* evidence of the identity of the actual driver of the vehicle involved in the accident was controverted, indeed the arresting officer testified that he had not seen Hinnah in the driver's seat. *Id.* In the instant case, Driver admitted to being the driver involved in the accident.