John William ETHETTON, Petitioner–Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent–Appellant.

No. 26614.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 10, 2006.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Cheryl Caponegro Nield, Office of the Attorney General, Jefferson City, for Appellant.

No Brief filed for Respondent.

KENNETH W. SHRUM, Judge.

Citing part of Missouri's Implied Consent Law, specifically section 577.041.3, Missouri's Director of Revenue ("Director") revoked the license of John William Ethetton ("Ethetton") to operate a motor vehicle.[1] Director based the revocation on Ethetton's refusal to submit to a chemical test of his breath pursuant to section 577.020.1, RSMo Cum.Supp.2001.

Ethetton petitioned the circuit court for review of Director's decision, per section 577.041.4. After an evidentiary hearing, the court entered a judgment that set aside the revocation and ordered Ethetton's license reinstated. Director appeals. We reverse and remand.

The parties submitted the case to the judge by using Director's records. Included was a written report of a motor vehicle accident prepared by a highway patrolman ("Mitchell") and an alcohol influence report ("AIR") filed by Mitchell. Ethetton presented no evidence at trial. Evidence from Mitchell's reports includes the following.

1. All statutory references are to RSMo Cum. Supp.2002, unless otherwise indicated.

On May 9, 2003, at 2:48 a.m., Mitchell was sent to investigate a motor vehicle accident where the driver had left the scene. He got to the accident scene at 3:11 a.m. There, he learned it was a single vehicle accident involving a pick-up truck. He ultimately learned the truck was owned by Ethetton.

From the physical evidence, Mitchell concluded the truck crossed the highway centerline as it rounded a curve. It then ran off the left side of the highway, struck a guardrail, returned to the right side of the road, and struck a guardrail there.

Earlier, as Mitchell headed to the accident, he overheard a radio message relating to the accident. Specifically, a county dispatcher stated a towing company employee had called to report he was going to tow the subject truck and the person who requested the tow was "at the Table Rock Inn, Room 16."

Armed with this information, Taney County deputies went to the motel, found Ethetton, and took him to the accident scene. Once Ethetton arrived, Mitchell asked him what had happened. Ethetton answered: "Driving along an animal ran out. I dodged it hit the guardrail, went over to the other side hit it and went up on it."

As Mitchell talked with Ethetton, he noticed Ethetton smelled strongly of "intoxicants," that his eyes were "watery, bloodshot and glassy," and he "almost fell over several times." Mitchell's request of Ethetton that he do field sobriety tests was refused. At 3:25 a.m. Mitchell arrested Ethetton, read him his Miranda rights, and took him to the Taney County sheriff's office. Once there, Mitchell again gave Ethetton his Miranda rights. Moreover, he read to Ethetton the implied consent form before asking him to take the breathalyzer test. However, Ethetton refused to take the test.

When Director received this information, she revoked Ethetton's driver's license. Ethetton appealed from that decision and the judge ordered Ethetton's license reinstated. Director's appeal to this court followed.

■ There are three requirements that must be met before a trial court can uphold Director's decision to revoke a person's driving privileges based on section 577.041: Director must show (1) the driver was arrested; (2) the arresting officer had reasonable grounds to believe the driver was driving while intoxicated; and (3) the driver refused to submit to a chemical test. *Jarrell v. Director of Revenue*, 41 S.W.3d 42, 43[1] (Mo.App.2001); § 577.041.4. If the trial court finds that one of the three requirements has not been met, then the court must order the director to reinstate a driver's privileges. *Id.* at 43[2]; § 577.041.5.

The trial court here found Director presented sufficient evidence to carry her burden as to arrest and refusal, but failed to meet her burden of showing Mitchell had reasonable grounds to believe Ethetton had been driving while intoxicated. The court explained as follows:

"[T]he record reflects that no officer or any other witness saw [Ethetton] driving the motor vehicle nor did any witness comment on [Ethetton's] condition immediately following the accident. The Trooper's first encounter with [Ethetton] was ... approximately 45 minutes to one hour after the accident and there is no evidence on the record indicating [Ethetton's] condition at the time of the accident was anything but normal. The evidence only demonstrates that [Ethetton] appeared to be intoxicated one hour after the accident.... The Court finds that the evidence demonstrates that the Trooper did not have reasonable

grounds to believe that [Ethetton] was in an intoxicated condition while driving at the time of the accident and therefore the Director failed to present a *prima facie* case and [Ethetton] was not required to present rebuttal evidence."

■ Director's only point relied on urges reversal of the judgment reinstating Ethetton's driving privileges. She argues that despite the court's ruling to the contrary, substantial uncontroverted evidence in the record shows Mitchell had reasonable grounds to believe Ethetton was driving while intoxicated when the accident occurred. In support, Director points to evidence that (1) Ethetton left the accident site; (2) Mitchell learned Ethetton went to a motel following the accident; (3) Mitchell learned Ethetton called a towing company to have his truck moved; (4) Ethetton admitted to Mitchell he was driving when the accident happened; (5) when Ethetton was brought to the accident site, he smelled strongly of "intoxicants," his eyes were "watery, bloodshot and glassy," he "almost fell over several times;" and (6) Ethetton refused to perform field sobriety tests.

Appellate review of judgments relating to revocation of driving privileges for failure to take a chemical test is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *See, e.g., Berry v. Director of Revenue*, 885 S.W.2d 326, 328 (Mo.banc 1994); *Jarrell*, 41 S.W.3d at 46. Consequently, we review to determine if there was substantial evidence to support the trial court's judgment, whether the judgment was against the weight of the evidence, and whether the judgment erroneously declared the law or erroneously applied the law. *Calicotte v. Director of Revenue*, 20 S.W.3d 588, 591 (Mo.App. 2000).

■ When determining sufficiency of evidence pursuant to the *Murphy v. Car-*

*ron* standard, appellate courts accept as true the evidence and inferences favorable to the trial court's judgment, disregarding all contrary evidence. *Jarrell*, 41 S.W.3d at 46[8]. However, "[i]f the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, then there is no need to defer to the trial court's judgment." *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620[8] (Mo.banc 2002).

■ The salient issue here is whether Mitchell had reasonable grounds (as contemplated by section 577.041) to believe Ethetton drove a motor vehicle in an intoxicated condition during the early morning of May 9, 2003. Missouri courts treat the "reasonable grounds" requirement in section 577.041 as being virtually synonymous with probable cause to arrest. *Id.* at 620[3]. Thus, in *Hinnah* the director revoked a driver's license because of his noncompliance with Missouri's implied consent law, yet the court used "probable cause" principles to describe the "reasonable grounds" standard of section 557.041, saying:

> " 'Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense.' Whether there is probable cause to arrest depends on the information in the officer's possession prior to the arrest. There is no precise test for determining whether probable cause exists; rather, it is based on the particular facts and circumstances of the individual case."

*Id.* at 621[9–11] (citations omitted).

■ Just as "[i]t is not necessary for an officer to actually observe a person driving to have probable cause to arrest the person for driving while intoxicated," *McCabe*

*v. Director of Revenue,* 7 S.W.3d 12, 14[5] (Mo.App.1999), it is equally true that a "reasonable grounds" finding in a section 577.041 case is not precluded solely because the reporting officer never saw the revoked person drive a motor vehicle in an intoxicated condition. *Swanberg v. Director of Revenue,* 122 S.W.3d 87, 90–91 (Mo.App.2003). As stated in *Howard v. McNeill,* 716 S.W.2d 912 (Mo.App.1986), "[i]t is not necessary that the arresting officer possess all of the information concerning the offense and the arrestee's participation in it, in order to form a belief amounting to probable cause." *Id.* at 915[2]. All that is required is that an officer be "possessed of facts which would justify a person of reasonable caution to form a belief that an offense has been committed and that the person to be arrested committed it." *Id.* at 915[1].

Here, the uncontroverted record shows that Ethetton wrecked his truck while driving it at approximately 2:16 a.m. in a rural area of Taney County; that the accident happened as Ethetton drove into a curve, crossed the centerline and the left lane of the highway, struck a guardrail on the wrong side of the road, and then returned back across the highway where the truck struck the guardrail on the right side of the roadway. Both the truck and guardrail sustained damage, yet Ethetton never contacted any law enforcement official. Instead, he went to a motel. There he called a towing company to have his truck taken from the accident scene. When Ethetton was found and returned to the scene (approximately one hour after the accident), Mitchell detected a strong order of alcohol about him and saw other indicia of intoxication as earlier described. When Mitchell asked Ethetton to perform field sobriety tests, he refused. Further, the record is devoid of any showing that Mitchell had any knowledge that Ethetton consumed any alcohol after the accident. *See Swanberg,* 122 S.W.3d at 91; *McNeill,* 716 S.W.2d at 914–15.

These are uncontroverted facts that we must consider as part of our review. Our standard of review simply does not permit the disregard of any uncontroverted evidence that supports Director's claim that all elements of the revocation case were proven. *Swanberg,* 122 S.W.3d at 91[9]. Moreover, we must constantly bear in mind that the dispositive issue is not whether Ethetton actually drove a motor vehicle while in an intoxicated condition, but whether Mitchell had reasonable grounds to believe Ethetton had done so. *Hinnah,* 77 S.W.3d at 622.

With the foregoing in mind and looking at the uncontroverted facts from the perspective of a prudent, cautious, and trained law enforcement officer, we find that Mitchell's observations of Ethetton and the information he had about the accident were sufficient to establish reasonable grounds to believe that Ethetton was driving his vehicle in an intoxicated condition at the time of the accident. *See Swanberg,* 122 S.W.3d at 91; *McNeill,* 716 S.W.2d at 915.[2]

---

2. In *McNeill* and *Swanberg,* the respective arrestees left an accident scene before the arresting officer arrived. In each case the officer first saw the arrestees approximately an hour after their respective motor vehicle accidents. Unlike this case, in *McNeill* and *Swanberg* evidence was presented to each hearing court about post-accident drinking by the arrestees, although that information was not given the officers before the respective arrests. In both cases, the hearing courts found the officers lacked reasonable grounds for reporting the arrestees had driven motor vehicles while intoxicated. On appeal, those decisions were reversed. We have relied heavily on *McNeill* and *Swanberg* because the facts are similar, yet were less favorable to finding "reasonable grounds" than are the facts here. This follows because of the post-

The hearing court's finding that no reasonable grounds existed for Mitchell to conclude Ethetton had driven while intoxicated is against the weight of the evidence and is not supported by substantial evidence. *See Swanberg*, 122 S.W.3d at 91. The trial court erred when it ordered Ethetton's license reinstated.[3] Point granted.

The judgment is reversed and the cause remanded for a new trial.

GARRISON and BARNEY, JJ., Concur.

---

accident drinking evidence in *McNeill* and *Swanberg* that is not in this case.

**3.** We have not ignored *Pontius v. Director of Revenue*, 153 S.W.3d 1 (Mo.App.2004), an eastern district case that arguably reached a different result on similar facts. Although *Pontius* appears to conflict with *McNeill* (also an eastern district opinion), the *Pontius* opinion does not discuss *McNeill*. *McFall v. Director, Dept. of Revenue*, 162 S.W.3d 526, 533–34 n. 8 (Mo.App.2005). To the extent, if any, that *Pontius* cannot be distinguished factually from this case, note 2 explains why we rely heavily on *McNeill* and *Swanberg* and not *Pontius*.