

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **STEPHEN C. SMITH,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD82995** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | **February 18, 2020** |
| **DIRECTOR OF REVENUE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Lafayette County, Missouri**
The Honorable Kelly Rose, Judge

Before Division Two:  Cynthia L. Martin, Presiding Judge, Thomas H. Newton, Judge
and Gary D. Witt, Judge

Appellant Stephen Smith ("Smith")[1] appeals the judgment of the Circuit Court of Lafayette County sustaining the revocation of Smith's driving privileges.  Smith raises one point on appeal challenging whether the arresting officer had probable cause to support his suspicion of driving while intoxicated.  We affirm.

---

[1] This case was originally captioned Steven Smith v. Director of Revenue.  However, Appellant's actual name is Stephen.

## Statement of Facts[2]

On November 8, 2018, at 10:49 p.m., Sergeant Cody Smith ("Sgt. Smith") observed Smith driving 47 miles per hour in a 35 mile per hour zone. Sgt. Smith stopped Smith at Highway 131 and North Outer Road in Odessa, Missouri. Sgt. Smith detected a strong odor of alcohol on Smith's breath. When Sgt. Smith asked if he had consumed alcohol, Smith replied, "[N]o, I spilled a beer on me." Smith later admitted to drinking four or five beers earlier in the evening at a local bar. Smith stated he was driving home from the bar when he was stopped. Sgt. Smith further observed Smith's pupils were constricted and his eyes were glassy, bloodshot, and watery.

At Sgt. Smith's request, Smith stepped out of his vehicle and sat in the front passenger's seat of the patrol car. Sgt. Smith observed that Smith struggled "quite a bit" to walk back to the patrol car, but acknowledged Smith was significantly overweight. Sgt. Smith asked Smith to submit to field sobriety tests. Smith stated that he had "been through this before" and that "he was not going to take any test because he could not pass them." Sgt. Smith placed Smith under arrest on suspicion of driving while intoxicated and took him to the police station. At the station Smith again refused to complete any field sobriety tests. Sgt. Smith read him the Implied Consent language from the form and asked Smith to take a breath test, which Smith refused. Consequently Sgt. Smith provided Smith the documentation regarding the revocation of Smith's license pursuant to section 302.574,[3]

---

[2] This court accepts as true the evidence and inferences favorable to the circuit court's judgment and disregards contrary evidence. *Stander v. Szabados*, 407 S.W.3d 73, 78 (Mo. App. W.D. 2013).

[3] All statutory references are to RSMo 2016

and issued a fifteen-day temporary permit. The Director of Revenue ("Director") revoked Smith's driving privileges for one year. 302.574.3.

On December 5, 2018, Smith filed a petition in the circuit court seeking review of the revocation of his driving privileges pursuant to 302.574.4. The case was tried to the circuit court on May 9, 2019. On June 13, 2019, the circuit court entered judgment in favor of the Director finding that: "[Smith] was arrested; that the arresting officer had reasonable grounds to believe [Smith] was driving a motor vehicle while in an intoxicated condition; [Smith] refused to submit to a chemical test; and therefore, [Smith's] Petition should be and is hereby denied." This appeal followed.

## Analysis

In his only point on appeal, Smith alleges the circuit court erred in sustaining the Director's revocation of Smith's driving privileges because the arresting officer lacked probable cause to arrest Smith for an alcohol related traffic offense.

## Standard of Review

"A trial court's judgment in a driver's license revocation case is reviewed as any court-tried civil case." *Rothwell v. Dir. of Revenue*, 419 S.W.3d 200, 203 (Mo. App. W.D. 2013). We will affirm the circuit court's judgment unless "there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "The evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment and all contrary evidence and inferences are disregarded." *Rothwell*, 419 S.W.3d at 203.

3

**Discussion**

At the hearing, the Director has the burden to prove: "(1) whether or not the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) whether or not the person refused to submit to the test." *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002) (citing section 577.041.5 RSMo. Supp. 1998).[4] On appeal, the only element in contention is whether Sgt. Smith had reasonable grounds to believe Smith was driving while intoxicated.

"'Reasonable grounds' is virtually synonymous with probable cause." *Id.* Probable cause requires more than a mere suspicion of intoxication, but less than absolute certainty. *Rain v. Dir. of Revenue*, 46 S.W.3d 584, 588 (Mo. App. E.D. 2001). "Probable cause to arrest for driving while intoxicated exists when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist." *Id.* at 587. Missouri courts have found a combination of observations indicating intoxication are sufficient for a finding of probable cause. *Id.* at 588. Even absent field sobriety tests, probable cause is proven using other indicators of intoxication such as: an odor of alcohol, behaviors, mannerisms, and physical expressions. *Id.* at 587-89.

In *Rain*, an officer had reasonable grounds to arrest a driver for driving while intoxicated when Rain, the driver, told the officer he had proceeded through the intersection

---

[4] Since *Hinnah*, section 577.041.5 RSMo. Supp. 1998) has been amended. The hearings are now governed by section 302.574, which has the same requirements.

4

when the traffic signal was green and another vehicle ran a red light and struck his car. *Id.* at 586. The intersection was not controlled by electric signals but four-way stops signs. *Id.* The officer also observed that: Rain's eyes were glassy and bloodshot; he was unsteady on his feet; his speech was slurred, and he had trouble concentrating. *Id.* The officer did not smell alcohol on Rain's breath. *Id.* Witnesses reported Rain was driving more than 80 miles per hour when it ran the stop sign, struck a planter box forming the median of the roadway, briefly became airborne, and struck a parked car, causing a chain reaction to the other damaged parked cars. *Id.* The Eastern District of this Court held that the totality of the arresting officer's observations made it more probable than not that Rain was driving while intoxicated. *Id.* at 589.

This is in contrast to *Rocha v. Director of Revenue*, 557 S.W.3d 324 (Mo. App. W.D. 2018). In *Rocha*, this Court found no indicia of intoxication present to support a finding of probable cause for the arrest. *Id.* at 327. The arresting officer's only basis for believing that Rocha was intoxicated was due to "the odor of intoxicants," that Rocha's eyes were bloodshot, and Rocha admitted to drinking fifteen hours prior to the stop. This Court specifically noted that there were no other signs of intoxication such as "glassy eyes" or problems with "gross motor movements." *Id.*

Just as in *Rain*, and in contrast to *Rocha*, Sgt. Smith's testimony is sufficient in itself to support a finding of probable cause. After 11:00 p.m., Smith was driving in excess of the speed limit and did not pull over immediately when the officer activated his lights and siren but passed an area with a wide shoulder to pull onto a side road. Smith had a strong odor of alcohol, and admitted that he had been at a bar since 4:00 in the afternoon and

5

consumed "four or five beers." Smith informed the officer that he had spilled a beer on himself. In discussing Smith's ability to walk or balance himself, Sgt. Smith testified that, "[Smith] "struggle[d] quite a bit to come back to my police car, and eventually take a seat in it." Sgt. Smith further testified that Smith's eyes were constricted, watery, and bloodshot. When Smith was asked to perform the field sobriety tests, he responded, that he had been through this before and he was not going to take any tests because he could not pass them. Sgt. Smith further testified that based on his own observation of people impaired by alcohol in his personal and professional life, it was his opinion that Smith was intoxicated. The trial court believed this testimony. The totality of the circumstances supports a finding of probable cause that Smith was driving his vehicle in an intoxicated state.

Smith points to additional evidence which would support a conclusion that he was not impaired from the consumption of alcohol at the time of his arrest. Smith points out that other than a brief delay in pulling over, Sgt. Smith observed no signs of impaired driving while he observed the car in motion. He also notes that the officer did not observe any problems with Smith's motor skills in removing his license from his wallet and handing it to the officer. Smith testified that the odor of alcohol was due to someone else spilling a beer on him, that he was unable to perform any of the field sobriety tests because of his physical condition of being overweight and notes that Sgt. Smith's report indicates that because he does not know Smith that he is unsure if the difficulty in walking is due to his weight or impairment. He testified he could not perform a breathalyzer because he has COPD and can't blow hard enough for the machine to obtain a result. He points to the officer's testimony that the odor of alcohol alone does not establish that a person is impaired

6

from drinking and points to additional reasons that may cause a person to have bloodshot or watery eyes. He also notes the officer's testimony that Smith was "speaking pretty well." Certainly all of this evidence would support the trial court reaching a different conclusion, but as noted in our standard of review, we consider all evidence consistent with the trial court's judgment and disregard all contrary evidence.

Smith relies on *Hinnah*, where the Missouri Supreme Court affirmed a trial court's finding that an arresting officer lacked probable cause to arrest an individual for driving while intoxicated. 77 S.W.3d at 620-22. There, an officer saw a pickup truck parked on the shoulder of an interstate with its engine running. *Id*. at 618. Hinnah was sleeping on the passenger side of the cab. *Id.* The officer awoke Hinnah and noticed that Hinnah smelled of an intoxicating beverage. *Id.* The officer testified that Hinnah's eyes were watery, glassy and bloodshot, and that when Hinnah exited the pickup he used the passenger-side door to keep his balance. *Id.* Hinnah told the officer he had fallen asleep while driving and struck a concrete barrier. *Id*. at 619. While the trial court found that the officer lacked probable cause, the Missouri Supreme Court held:

> The trial court had evidence to support a finding of probable cause, but was free as well to draw the conclusion that there was no probable cause. Either conclusion was sustainable under the record, depending upon the trial court's assessment of the credibility of the officer's testimony that Hinnah said he was driving or upon the court's assessment of the evidence of probable cause as to intoxication.

*Id*. at 622.

Like in *Hinnah*, "[t]his Court defers to the trial court's determination of credibility." *Id*. at 621. Because the circuit court found "that the arresting officer had reasonable

7

grounds to believe [Smith] was driving a motor vehicle while in an intoxicated condition," we infer that the trial court found Sgt. Smith's testimony credible. Just as in *Hinnah*, the determination of probable cause hinged on the credibility of the arresting officer, but unlike *Hinnah* the circuit court in the instant case found the officer's testimony credible. Thus, the circuit court's finding of probable cause is not contrary to *Hinnah* as Smith asserts.

We hold that the indicia of Smith's delay in pulling over when there was no road condition that would have made pulling over difficult or dangerous; his watery, glassy, and bloodshot eyes; strong odor of alcohol; difficulty walking and maintaining balance; admission of significant alcohol consumption; and Sgt. Smith's testimony that, based on his knowledge of people impaired by alcohol in his professional and personal life, he believed Smith was impaired by alcohol are sufficient to support a finding of probable cause to arrest Smith for driving while intoxicated. Point One is denied.

**Conclusion**

We affirm.

_____
Gary D. Witt, Judge

All concur

8